United States Courts
Southern District of Texas
FILED

OCT 15 2002

Michael N. Milby, Clerk

*8 7*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

BROWNDREW, L.L.C.

     V.

Triad Builders, Inc.; Elsa State Bank & Trust Co.;
G&T Paving Co.; Aqua Tech; Villanueva Fence &
Supply, Co.; Valley Builders Co.; Robert's Welding
& Fabricators, Inc.; Bowman Distributing Company,
Inc.; Omega Systems; Galvan Sheet Metal Shop;
Raymond Roofing, Inc.; Edmann's Commercial
Refrigeration & A/C; Skipper's Repair Plumbing, et al.

CASE NUMBER: B-02-137

---

### DEFENDANTS ROBERT MARISCAL'S STATEMENT CLAIM AGAINST BROWNDREW, L.L.P. RELATING TO CONSTRUCTION ON BUILDING LOCATED AT 1735 COFFEE PORT ROAD, BROWNSVILLE, TEXAS

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW** Robert Mariscal, who now file this, his Statement Of Claim Against Browndrew, L.L.P. relating to Construction on Building Located at 1735 Coffee Port Road, Brownsville, Texas, and would respectfully show the Court the following:

Robert Mariscal performed taping, bedding, painting and wallpapering on the building. Mariscal had a contract with Triad Builders, Inc. for twenty eight thousand dollars ($28,000.00).

On May 20, 2002, Mariscal filed an Afidavit For Mechanics and Materialmans Lien in Cameron County. That document was filed at Volume 8015, Page 175, Official Records of Cameron County, Texas. A copy of the Lien with attachments is attached hereto as Exhibit "A."

Marical has not ever received any payment for the work performed.

ORIGINAL

Mariscal's work was performed during the months of February and March, 2002 and was completed on or about March, 20, 2002.

Notice of claim was sent to Browndrew, L.L.P., on May 17, 2002.  A copy of that notice is attached hereto as Exhibit "B."

Respectfully submitted,

LAW OFFICE OF JOHN KING
3409 North 10th Street
McAllen, Texas 78501
Telephone: (956) 687-6294
FAX: (956) 687-5514

By: _____
**M. STEVEN DECK**
Texas Bar Card No. 05630175

## CERTIFICATE OF SERVICE

I hereby certify that I have, on the ___ day of October, 2002, caused the foregoing document to be forwarded, by certified mail, return receipt requested, to the below-listed attorney(s) of record:

William L. Rentfro
Browndrew, L.L.C.
185 E. Ruben Torres Blvd.
Brownsville, Texas 78520
*Attorney for Plaintiff and Counter-Defendant, Browndrew, L.L.C.*

By First Class Mail:

Jerry Lee Stapleton
Stapleton & Curtis
P.O. Box 2644
Harlingen, Texas 78550
Attorney for Defendant and Counter-Claimant, Bowman Distributing, Bowman Dist. Co., Inc.

Marshall R. Ray
Ransom & Ray
550 E. Levee Street
Brownsville, Texas 78520-5343
*Attorney for Defendant Skipper Repair & Plumbing*

G.D. Lozano
P.O. Box 854
La Feria, Texas 78559
*Pro Se*

Alison D. Kennamer
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren
Brownsville, Texas 78522
*Attorneys for Defendant Sherwin-Williams Company*

Lance A. Kirby
Jones, Galligan, Key & Lozano, L.L.P.
2300 W. Pike Blvdl, Ste. 300
Weslaco, Texas 78599
*Attorneys for Defendant, Elsa State Bank*

Curtis Bonner
Bonner & Bonner
P.O. Box 288
Harlingen, Texas 78551
*Attorneys for Defendant and Counter-Claimant, M & M Commercial Lawn Services, Inc.*

Abel Gonzales
P.O. Box 5136
Brownsville, Texas 78520
*Pro Se for Defendant G & T Paving Co.*

Edmundo Martinez
705 S. San Antonio
San Juan, Texas 78589
*Pro Se for Defendant Edmann's Commercial Refrigeration & AC*

Marshall R. Ray
Ransome & Ray
550 E. Levee street
Brownsville, Texas 78520-5343
*Attorney for Defendant and Cross-Claimant, Skipper Repair Plumbing*

Daniel G. Rios
Law Office of Daniel G. Rios
323 Nolana Loop
McAllen, Texas 78504
*Attorney for Defendant, Lifetime Industries, Inc.*

Robert L. Eden
Matthews Carlton
8131 LBJ Fwy, Ste. 700
Dallas, Texas 75251
*Attorney for Defendant, Consolidated Electric Distributors, Inc.*

Mauro L. Reyna, III
P.O. Box 969
Penitas, Texas 78576
*Attorney for Intervenor-Plaintiff, Robert Cardenas, Jr., d/b/a Robert Welding & Fabricators, Inc.*

John Skaggs
Skaggs & Garza
P.O. Drawer 2285
McAllen, Texas 78502
*Attorney for LCM Management Co., d/b/a South Texas Flag*

Antonio Villeda
Law Office of Antonio Villeda
5414 N. 10th Street
McAllen, Texas 78504

Brittany L. Wills
Walker & Twenhafel, L.L.P.
P.O. Drawer 3766
McAllen, Texas 78502-3766

Tom Walthall Jr.
The Gardner Law Firm
745 East Mulberry Ave., Suite 100
San Antonio, Texas 78212-3149

*Attorney for RZB, Inc., d/b/a Global Electric*

Gregory E. Turley
504 E. Dove Ave., Suite B
McAllen, Texas 78504
*Attorneys for Sherwin Williams Co.*

Marshall L. Armstrong
Warren, Drugan & Barrows, P.C.
800 Broadway
San Antonio, Texas 78215
*Attorney for D.E.A. Specialties Co. Ltd.*

Michael McGurk
Kittleman, Thomas, Ramirez & Gonzalez, PLLC
P.O. Box 1416
McAllen, Texas 78505
*Attorney for Hope Lumber & Supply Co.*

M. STEVEN DECK

## AFFIDAVIT FOR MECHANICS AND MATERIALMANS LIEN
### (Notice this is not a lien.
### This is only an Affidavit claiming a lien.)

STATE OF TEXAS        §

                                §

COUNTY OF HIDALGO    §

      **BEFORE ME**, the undersigned authority, on this day personally appeared Robert Mariscal who upon his oath deposed and stated:

      "My name is Robert Mariscal. I am the owner of Robert Mariscal Painting, of Mission Texas, herein after referred to as "Claimant".

      "I am authorized to make this affidavit and am fully competent to do so. I have personal knowledge of the facts set forth herein.

      "Claimant's address is: Route 7 Box R34
                                  Mission, Texas 78572

      "Pursuant to a contract by and in between Claimant and Triad Builders, Inc., Claimant has furnished labor and materials during February through March, 2002 to improve real property described herein.

1. After allowing all just credits, offsets and payments the amount of $28,000.00, plus interest and $500.00 in attorneys fees, remains unpaid and is due and owing to Claimant under said contract, and Robert Mariscal Painting, Claimant, claims a lien on said property and improvements to secure payment of said amount.

2. The names of the owners or reputed owners of the real property described herein and improvements are:

                        Browndrew, L.L.P.
                        1333 N. Kingsberry
                        Chicago, Illinois 60622.

Exhibit "A"

3. A general statement of the materials furnished by the Claimant is as follows: All materials and labor for taping, Bedding, Painting and Wallpapering an office Building.

4. The name of the person to whom the Claimant furnished the materials and labor is:

Triad Builders, Inc.<br>
2300 W. Pike Blvd.<br>
Suite 204<br>
Weslaco, Texas 78596.

5. Legal description of the property sought to be charged with the lien is: Attached hereto as Exhibit "A"

6. Notice of Claimant's claim against the owner was sent to the owner on the following dates and in the manner indicated below:

| *Date of Notice of Claim Sent:* | *Method by Which Notice Sent:* |
|---|---|
| May 17, 2002. | First Class U.S. Mail & |
| | Certified U.S. Mail |

7. Claimant also claims a constitutional lien on such property pursuant to the provisions of Article 16, Section 37, of the Texas Constitution.

"Further Affiant Sayeth not."

ROBERT MARISCAL PAINTING
BY: Robert Mariscal

SWORN TO and SUBSCRIBED before me on this the 17th day of May, 2002.

NOTARY PUBLIC in and for the
STATE OF TEXAS

05/16/2002  14:13  9565551331

## EXHIBIT "A"

BEING A 1.47 ACRE TRACT OF LAND, MORE OR LESS, OUT OF LOT 2, BLOCK 1, HAPCO SUBDIVISION IN CAMERON COUNTY, TEXAS, ACCORDING TO THE PLAT OF SAID SUBDIVISION, RECORDED IN CABINET 1 PAGE 1116-B MAP RECORDS, CAMERON COUNTY, TEXAS; AND SAID 1.47 ACRE TRACT OF LAND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT A 1/2 INCH IRON ROD FOUND FOR THE SOUTHWEST CORNER OF LOT 2, BLOCK 1 OF SAID HAPCO SUBDIVISION, BEING ON THE NORTH RIGHT-OF-WAY LINE OF COFFEEPORT ROAD (HAVING AN 80' RIGHT-OF WAY);

THENCE, NORTH 06 DEGREES 05 MINUTES 04 SECONDS EAST, LEAVING THE NORTH RIGHT-OF-WAY LINE OF COFFEEPORT ROAD (HAVING AN 80' RIGHT-OF-WAY), ALONG THE EAST BOUNDARY LINE OF A 30 FOOT ACCESS EASEMENT AS SHOWN ON THE RECORDED PLAT OF SAID HAPCO SUBDIVISION, AND ALONG THE WEST BOUNDRY LINE OF LOT 1, BLOCK 1 OF SAID HAPCO SUBDIVISION, A DISTANCE OF 336.3' FEET TO A 1/2 IRON ROD FOUND ON THE SOUTH BOUNDRY LINE OF LOT 1 BLOCK 1 OF SAID HAPCO SUBDIVISION;

THENCE, SOUTH 84 DEGREES 54 MINUTES 56 SECONDS EAST, LEAVING THE WEST BOUNDARY LINE OF LOT 2, BLOCK 1, OF SAID HAPCO SUBDIVISION, ALONG THE SOUTH BOUNDRY LINE OF LOT 1, BLOCK 1 OF SAID HAPCO SUBDIVISION AND ALONG THE NORTH BOUNDRY LINE OF LOT 2, BLOCK 1 OF SAID HAPCO SUBDIVISION, AT A DISTANCE OF 168.33 FEET, THE SOUTHWEST CORNER OF A 1.264 ACRE TRACT FOR THE PUBLIC UTILITIES BOARD ELECTRICAL SUBSTATION RECORDED IN VOLUME 855, PAGE 557, OF THE DEED RECORDS OF CAMERON COUNTY, TEXAS, AT A DISTANCE OF F168.45 FEET AND 0.07 FEET RIGHT, A 1/2 INCH IRON ROD FOUND, AND CONTINUING A TOTAL DISTANCE OF 193.15 FEET FOR THE NORTHWEST CORNER OF THE HEREIN DESCRIBED TRACT 2, AND THE PLACE OF BEGINNING;

THENCE, CONTINUING SOUTH 84 DEGREES 54 MINUTES 56 SECONDS EAST, ALONG THE SOUTH BOUNDRY LINE OF LOT 1 BLOCK 1 OF SAID HAPCO SUBDIVISION AND ALONG THE NORTH BOUNDRY LINE OF LOT 2, BLOCK 1 OF SAID HAPCO SUBDIVISION, AT A DISTANCE OF 145.18 FEET FOR THE NORTHEAST CORNER OF THIS TRACT;

THENCE, SOUTH 05 DEGREES 05 MINUTES 04 SECONDS WEST, LEAVING THE NORTH BOUNDRY LINE OF LOT 2, BLOCK 1 OF SAID HAPCO SUBDIVISION, ALONG THE WEST BOUNDRY LINE OF SAID 1.264 ACRE TRACT OF LAND, A DISTANCE OF 469.72 FEET TO A 5/8 INCH IRON ROD FOUND AT THE SOUTHEAST CORNER OF LOT 2, BLOCK 1 OF SAID HAPCO SUBDIVISION, BEING ON THE NORTH RIGHT-OF-WAY LINE OF COFFEEPORT ROAD (HAVING AN 80' RIGHT-OF-WAY) AND ON A CURVE TO THE RIGHT, FOR THE SOUTHEAST CORNER OF THIS TRACT;

THENCE, ALONG THE NORTH RIGHT-OF-WAY LINE OF COFFEEPORT ROAD (HAVING AN 80 RIGHT-OF-WAY) AND ALONG SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 1392.40 FEET, A DELTA ANGLE OF 06 DEGREES 13 MINUTES 21 SECONDS, AN ARC LENGTH OF 151.22 FEET, A CHORD BEARING OF NORTH 68 DEGREES 48 MINUTES 38 SECONDS WEST, AND A CHORD DISTANCE OF 151.15 FEET FOR THE SOUTHWEST CORNER OF THIS TRACT;

THENCE, NORTH 05 DEGREES 05 MINUTES 04 SECONDS EAST, A DISTANCE OF 417.67 FEET TO THE POINT OF BEGINNING; CONTAINING 63896 SQUARE FEET OR 1.47 ACRES OF LAND, MORE OR LESS.

ALL DIMENSIONS ARE IN FEET AND DECIMALS THEREOF

BASIS OF BEARINGS ON THIS METES AND BOUNDS DESCRIPTION ARE AS PER HAPCO SUBDIVISION, RECORDED IN CABINET 1 PAGE 1116-B, MAP RECORDS OF CAMERON COUNTY, TEXAS

Robert Mariscal Painting                    2/25/02
Rt. 7 Box R34
Mission Tx.
                              Withdraw form
For the following profect;
SSA-Brownsville, Drew Group, Lease construct
1735 Coffeeport Rd.
Brownsville. Tx. 78521
       Between contractor Triad Builders and Robert Mariscal Painting
For the istalation of wallcovering and painting. Furnishing materials and
labor.

       Job is over 80% completed. Withdraw amount for 25,000.
New balance 3,000 remaining.

First Withdraw

Robert Mariscal Painting
Rt. 7 Box R34
Mission Tx.

<span style="text-align:center;">Withdraw form</span>

For the following profect;
SSA-Brownsville, Drew Group, Lease construct
1735 Coffeeport Rd.
Brownsville. Tx. 78521
Between contractor Triad Builders and Robert Mariscal Painting
For the istalation of wallcovering and painting. Furnishing materials and labor.

Work porformens is 100% complete.

First withdraw turned in on  2/25/02 for the amount of 25,000.

This withdraw beeing the second  for the remaining  balance  of 3,000. Job is 100% complete.

Robert Mariscal Painting
Rt. 7 Box R34
Mission Tx.

3 20 02

~~2/25/02~~

Withdraw form

For the following profect;
SSA-Brownsville, Drew Group, Lease construct
1735 Coffeeport Rd.
Brownsville. Tx. 78521
   Between contractor Triad Builders and Robert Mariscal Painting
For the istalation of wallcovering and painting. Furnishing materials and labor.

   Withdraw form is for the remaining balance of the 10% retainge agreed on contract.  For the amount of 2,800.

*third withdraw*

1997 Edition - Electronic Format

AIA Document A401 - 1997

# *Standard Form of Agreement Between Contractor and Subcontractor*

**AGREEMENT** made as of the 1 day of October in the year 2001
*(In words, indicate day, month and year)*

**BETWEEN** the Contractor:
*(Name, address and other information)*
Triad Builds, Inc.
2300 W. Pike Blvd., Suite #204
Weslaco, Texas 78596

*13 ✗*

and the Subcontractor:
*(Name, address and other information)*
Robert Mariscal Painting
Rt 7 Box R34
Mission, Texas 78572

The Contractor has made a contract for construction dated: June 4, 2001

With the Owner:
*(Name, address and other information)*
BROWNDREW, LLP.
1333 N. Kingsbury
Chicago, Illiois 60622

For the following Project:
*(Include detailed description of Project, location and address)*
SSA- Brownsville, Drew Group, Lease Construct
1735 Coffeeport Rd.
Brownsville, Texas 78521

which Contract is hereinafter referred to as the Prime Contract and which provides for the furnishing of labor, materials, equipment and services in connection with the construction of the Project. A copy of the Prime Contract, consisting of the Agreement Between Owner and Contractor (from which compensation amounts may be deleted) and the other Contract Documents enumerated therein has been made available to the Subcontractor.

The Architect for the Project is:
*(Name, address and other information)*
Valerio, Dewalt, Train Associates, Inc.
500 North Dearborn, 9th Floor
Chicago, Illinois 60610

The Contractor and the Subcontractor agree as follows.

## ARTICLE 1 THE SUBCONTRACT DOCUMENTS

1.1    The Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated therein; (3) Modifications issued subsequent to the execution of the

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.



©1997 AIA®
AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

Agreement between the Owner and Contractor, whether before or after the execution of this Agreement; (4) other documents listed in Article 16 of this Agreement; and (5) Modifications to this Subcontract issued after execution of this Agreement. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Subcontract Documents, other than Modifications issued subsequent to the execution of this Agreement, appears in Article 16.

1.2    Except to the extent of a conflict with a specific term or condition contained in the Subcontract Documents, the General Conditions governing this Subcontract shall be the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

1.3    The Subcontract may be amended or modified only by a Modification. The Subcontract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and the Subcontractor, (2) between the Owner and the Subcontractor, or (3) between any persons or entities other than the Contractor and Subcontractor.

1.4    The Subcontractor shall be furnished copies of the Subcontract Documents upon request, but the Contractor may charge the Subcontractor for the reasonable cost of reproduction.

## ARTICLE 2  MUTUAL RIGHTS AND RESPONSIBILITIES

2.1    The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and, to the extent that the provisions of the edition of AIA Document A201 current as of the date of this Agreement apply to this Agreement pursuant to Paragraph 1.2 and provisions of the Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations and responsibilities that the Owner, under such documents, assumes toward the Contractor, and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under such documents, assumes toward the Owner and the Architect. The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under such documents, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under such documents, has against the Owner, insofar as applicable to this Subcontract. Where a provision of such documents is inconsistent with a provision of this Agreement, this Agreement shall govern.

2.2    The Contractor may require the Subcontractor to enter into agreements with Sub-subcontractors performing portions of the Work of this Subcontract by which the Subcontractor and the Sub-subcontractor are mutually bound, to the extent of the Work to be performed by the Sub-subcontractor, assuming toward each other all obligations and responsibilities which the Contractor and Subcontractor assume toward each other and having the benefit of all rights, remedies and redress each against the other which the Contractor and Subcontractor have by virtue of the provisions of this Agreement.

## ARTICLE 3  CONTRACTOR

### 3.1    SERVICES PROVIDED BY THE CONTRACTOR

3.1.1    The Contractor shall cooperate with the Subcontractor in scheduling and performing the Contractor's Work to avoid conflicts or interference in the Subcontractor's Work and shall expedite written responses to submittals made by the Subcontractor in accordance with Paragraph 4.1 and Article 5. As soon as practicable after execution of this Agreement, the Contractor shall provide the Subcontractor copies of the Contractor's construction schedule

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.*



©1997 AIA®
AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR
AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

and schedule of submittals, together with such additional scheduling details as will enable the Subcontractor to plan and perform the Subcontractor's Work properly. The Subcontractor shall be notified promptly of subsequent changes in the construction and submittal schedules and additional scheduling details.

**3.1.2**   The Contractor shall provide suitable areas for storage of the Subcontractor's materials and equipment during the course of the Work. Additional costs to the Subcontractor resulting from relocation of such facilities at the direction of the Contractor, except as previously agreed upon, shall be reimbursed by the Contractor.

**3.1.3**   Except as provided in Article 14, the Contractor's equipment will be available to the Subcontractor only at the Contractor's discretion and on mutually satisfactory terms.

## 3.2   COMMUNICATIONS

**3.2.1**   The Contractor shall promptly make available to the Subcontractor information, including information received from the Owner, which affects this Subcontract and which becomes available to the Contractor subsequent to execution of this Subcontract.

**3.2.2**   The Contractor shall not give instructions or orders directly to the Subcontractor's employees or to the Subcontractor's Sub-subcontractors or material suppliers unless such persons are designated as authorized representatives of the Subcontractor.

**3.2.3**   The Contractor shall permit the Subcontractor to request directly from the Architect information regarding the percentages of completion and the amount certified on account of Work done by the Subcontractor.

**3.2.4**   If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Contractor, a subcontractor or anyone directly or indirectly employed by them (other than the Subcontractor), the Contractor shall, prior to harmful exposure of the Subcontractor's employees to such substance, give written notice of the chemical composition thereof to the Subcontractor in sufficient detail and time to permit the Subcontractor's compliance with such laws.

**3.2.5**   The Contractor shall furnish to the Subcontractor within 30 days after receipt of a written request, or earlier if so required by law, information necessary and relevant for the Subcontractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property, usually referred to as the site, on which the Project is located and the Owner's interest therein.

**3.2.6**   If the Contractor asserts or defends a claim against the Owner which relates to the Work of the Subcontractor, the Contractor shall make available to the Subcontractor information relating to that portion of the claim which relates to the Work of the Subcontractor.

## 3.3   CLAIMS BY THE CONTRACTOR

**3.3.1**   Liquidated damages for delay, if provided for in Paragraph 9.3 of this Agreement, shall be assessed against the Subcontractor only to the extent caused by the Subcontractor or any person or entity for whose acts the Subcontractor may be liable, and in no case for delays or causes arising outside the scope of this Subcontract.

**3.3.2**   The Contractor's claims for services or materials provided the Subcontractor shall require:

   .1   seven days' prior written notice except in an emergency;

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.*



©1997  AIA®
AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR
AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

.2   written compilations to the Subcontractor of services and materials provided and charges for such services and materials no later than the fifteenth day of the following month.

## 3.4   CONTRACTOR'S REMEDIES

**3.4.1**   If the Subcontractor defaults or neglects to carry out the Work in accordance with this Agreement and fails within three working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after three days following receipt by the Subcontractor of an additional written notice, and without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter due the Subcontractor.

## ARTICLE 4   SUBCONTRACTOR
### 4.1   EXECUTION AND PROGRESS OF THE WORK

**4.1.1**   The Subcontractor shall supervise and direct the Subcontractor's Work, and shall cooperate with the Contractor in scheduling and performing the Subcontractor's Work to avoid conflict, delay in or interference with the Work of the Contractor, other subcontractors or Owner's own forces.

**4.1.2**   The Subcontractor shall promptly submit Shop Drawings, Product Data, Samples and similar submittals required by the Subcontract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Contractor or other subcontractors.

**4.1.3**   The Subcontractor shall submit to the Contractor a schedule of values allocated to the various parts of the Work of this Subcontract, aggregating the Subcontract Sum, made out in such detail as the Contractor and Subcontractor may agree upon or as required by the Owner, and supported by such evidence as the Contractor may require. In applying for payment, the Subcontractor shall submit statements based upon this schedule.

**4.1.4**   The Subcontractor shall furnish to the Contractor periodic progress reports on the Work of this Subcontract as mutually agreed, including information on the status of materials and equipment which may be in the course of preparation, manufacture or transit.

**4.1.5**   The Subcontractor agrees that the Contractor and the Architect will each have the authority to reject Work of the Subcontractor which does not conform to the Prime Contract. The Architect's decisions on matters relating to aesthetic effect shall be final and binding on the Subcontractor if consistent with the intent expressed in the Prime Contract.

**4.1.6**   The Subcontractor shall pay for all materials, equipment and labor used in connection with the performance of this Subcontract through the period covered by previous payments received from the Contractor, and shall furnish satisfactory evidence, when requested by the Contractor, to verify compliance with the above requirements.

**4.1.7**   The Subcontractor shall take necessary precautions to protect properly the Work of other subcontractors from damage caused by operations under this Subcontract.

**4.1.8**   The Subcontractor shall cooperate with the Contractor, other subcontractors and the Owner's own forces whose Work might interfere with the Subcontractor's Work. The Subcontractor shall participate in the preparation of coordinated drawings in areas of congestion, if required by the Prime Contract, specifically noting and advising the Contractor of potential conflicts between the Work of the Subcontractor and that of the Contractor, other subcontractors or the Owner's own forces.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.*



©1997 AIA®
AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR
AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

## 4.2     LAWS, PERMITS, FEES AND NOTICES

**4.2.1**     The Subcontractor shall give notices and comply with laws, ordinances, rules, regulations and orders of public authorities bearing on performance of the Work of this Subcontract. The Subcontractor shall secure and pay for permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Subcontractor's Work, the furnishing of which is required of the Contractor by the Prime Contract.

**4.2.2**     The Subcontractor shall comply with Federal, state and local tax laws, social security acts, unemployment compensation acts and workers' compensation acts insofar as applicable to the performance of this Subcontract.

## 4.3     SAFETY PRECAUTIONS AND PROCEDURES

**4.3.1**     The Subcontractor shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures initiated by the Contractor and with applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property in accordance with the requirements of the Prime Contract. The Subcontractor shall report to the Contractor within three days an injury to an employee or agent of the Subcontractor which occurred at the site.

**4.3.2**     If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Subcontractor, the Subcontractor's Sub-subcontractors or anyone directly or indirectly employed by them, the Subcontractor shall, prior to harmful exposure of any employees on the site to such substance, give written notice of the chemical composition thereof to the Contractor in sufficient detail and time to permit compliance with such laws by the Contractor, other subcontractors and other employers on the site.

**4.3.3**     If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Subcontractor, the Subcontractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Contractor in writing. When the material or substance has been rendered harmless, the Subcontractor's Work in the affected area shall resume upon written agreement of the Contractor and Subcontractor. The Subcontract Time shall be extended appropriately and the Subcontract Sum shall be increased in the amount of the Subcontractor's reasonable additional costs of demobilization, delay and remobilization, which adjustments shall be accomplished as provided in Article 5 of this Agreement.

**4.3.4**     To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Subcontractor, the Subcontractor's Sub-subcontractors, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Subparagraph 4.3.3 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

## 4.4     CLEANING UP

**4.4.1**     The Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract. The Subcontractor shall not be held responsible for unclean conditions caused by other contractors or subcontractors.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.*



©1997 AIA®
**AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR
AGREEMENT**

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

**4.4.2** As provided under Subparagraph 3.3.2, if the Subcontractor fails to clean up as provided in the Subcontract Documents, the Contractor may charge the Subcontractor for the Subcontractor's appropriate share of cleanup costs.

## 4.5   WARRANTY

**4.5.1** The Subcontractor warrants to the Owner, Architect and Contractor that materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted by the Subcontract Documents, that the Work of this Subcontract will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Subcontract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Subcontractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Subcontractor, improper or insufficient maintenance, improper operation, or normal wear and tear under normal usage. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Documents.

## 4.6   INDEMNIFICATION

**4.6.1** To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract; provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 4.6.

**4.6.2** In claims against any person or entity indemnified under this Paragraph 4.6 by an employee of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Subparagraph 4.6.1 shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's Sub-subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts.

## 4.7   REMEDIES FOR NONPAYMENT

**4.7.1** If the Contractor does not pay the Subcontractor through no fault of the Subcontractor, within seven days from the time payment should be made as provided in this Agreement, the Subcontractor may, without prejudice to any other available remedies, upon seven additional days' written notice to the Contractor, stop the Work of this Subcontract until payment of the amount owing has been received. The Subcontract Sum shall, by appropriate adjustment, be increased by the amount of the Subcontractor's reasonable costs of demobilization, delay and remobilization.

## ARTICLE 5   CHANGES IN THE WORK

**5.1** The Owner may make changes in the Work by issuing Modifications to the Prime Contract. Upon receipt of such a Modification issued subsequent to the execution of the Subcontract Agreement, the Contractor shall promptly notify the Subcontractor of the Modification. Unless otherwise directed by the Contractor, the Subcontractor shall not

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.*



©1997 AIA®
AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR
AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

6

thereafter order materials or perform Work which would be inconsistent with the changes made by the Modifications to the Prime Contract.

**5.2**     The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

**5.3**     The Subcontractor shall make all claims promptly to the Contractor for additional cost, extensions of time and damages for delays or other causes in accordance with the Subcontract Documents. A claim which will affect or become part of a claim which the Contractor is required to make under the Prime Contract within a specified time period or in a specified manner shall be made in sufficient time to permit the Contractor to satisfy the requirements of the Prime Contract. Such claims shall be received by the Contractor not less than two working days preceding the time by which the Contractor's claim must be made. Failure of the Subcontractor to make such a timely claim shall bind the Subcontractor to the same consequences as those to which the Contractor is bound.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.*

## ARTICLE 6  MEDIATION AND ARBITRATION
### 6.1     MEDIATION
**6.1.1**     Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

**6.1.2**     The parties shall endeavor to resolve their claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Subcontract and the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**6.1.3**     The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.



### 6.2     ARBITRATION
**6.2.1**     Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 6.1.

**6.2.2**     Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. Demand for arbitration shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association, and a copy shall be filed with the Architect.

©1997 AIA®
AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

**6.2.3**    A demand for arbitration shall be made within the time limits specified in the conditions of the Prime Contract as applicable, and in other cases within a reasonable time after the claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations.

**6.2.4**    *Limitation on Consolidation or Joinder.* Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Subcontract shall include, by consolidation or joinder or in any other manner, any person or entity not a party to the Subcontract under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect, the Architect's employee, the Architect's consultant, or an employee or agent of any of them. This agreement to arbitrate and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**6.2.5**    *Claims and Timely Assertion of Claims.* The party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded.

**6.2.6**    *Judgment on Final Award.* The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 7    TERMINATION, SUSPENSION OR ASSIGNMENT OF THE SUBCONTRACT
### 7.1    TERMINATION BY THE SUBCONTRACTOR
**7.1.1**    The Subcontractor may terminate the Subcontract for the same reasons and under the same circumstances and procedures with respect to the Contractor as the Subcontractor may terminate with respect to the Owner under the Prime Contract, or for nonpayment of amounts due under this Subcontract for 60 days or longer. In the event of such termination by the Subcontractor for any reason which is not the fault of the Subcontractor, Sub-subcontractors or their agents or employees or other persons performing portions of the Work under contract with the Subcontractor, the Subcontractor shall be entitled to recover from the Contractor payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

### 7.2    TERMINATION BY THE CONTRACTOR
**7.2.1**    If the Subcontractor persistently or repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise to perform in accordance with this Subcontract and fails within seven days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after seven days following receipt by the Subcontractor of an additional written notice and without prejudice to any other remedy the Contractor may have, terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient. If the unpaid balance of the Subcontract Sum exceeds the expense of finishing the Subcontractor's Work and other damages incurred by the Contractor and not expressly waived, such excess shall be paid to the Subcontractor. If such expense and damages exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.*



©1997 AIA®
AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR
AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

**7.2.2**    If the Owner terminates the Contract for the Owner's convenience, the Contractor shall deliver written notice to the Subcontractor.

**7.2.3**    Upon receipt of written notice of termination, the Subcontractor shall:
.1    cease operations as directed by the Contractor in the notice;
.2    take actions necessary, or that the Contractor may direct, for the protection and preservation of the Work; and
.3    except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing Sub-subcontracts and purchase orders and enter into no further Sub-subcontracts and purchase orders.

**7.2.4**    In case of such termination for the Owner's convenience, the Subcontractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

## 7.3    SUSPENSION BY THE CONTRACTOR FOR CONVENIENCE
**7.3.1**    The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or interrupt the Work of this Subcontract in whole or in part for such period of time as the Contractor may determine. In the event of suspension ordered by the Contractor, the Subcontractor shall be entitled to an equitable adjustment of the Subcontract Time and Subcontract Sum.

**7.3.2**    An adjustment shall be made for increases in the Subcontract Time and Subcontract Sum, including profit on the increased cost of performance, caused by suspension, delay or interruption. No adjustment shall be made to the extent:
.1    that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible;
.2    that an equitable adjustment is made or denied under another provision of this Subcontract.

## 7.4    ASSIGNMENT OF THE SUBCONTRACT
**7.4.1**    In the event of termination of the Prime Contract by the Owner, the Contractor may assign this Subcontract to the Owner, with the Owner's agreement, subject to the provisions of the Prime Contract and to the prior rights of the surety, if any, obligated under bonds relating to the Prime Contract. In such event, the Owner shall assume the Contractor's rights and obligations under the Subcontract Documents. If the Work of the Prime Contract has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted.

**7.4.2**    The Subcontractor shall not assign the Work of this Subcontract without the written consent of the Contractor, nor subcontract the whole of this Subcontract without the written consent of the Contractor, nor further subcontract portions of this Subcontract without written notification to the Contractor when such notification is requested by the Contractor.

## ARTICLE 8  THE WORK OF THIS SUBCONTRACT
**8.1**    The Subcontractor shall execute the following portion of the Work described in the Subcontract Documents, including all labor, materials, equipment, services and other items required to complete such portion of the Work, except to the extent specifically indicated in the Subcontract Documents to be the responsibility of others.
*(Insert a precise description of the Work of this Subcontract, referring where appropriate to numbers of Drawings, sections of Specifications and pages of Addenda, Modifications and accepted Alternates.)*
The Subcontractor is to Furnish Material, Equipment, & Labor for the complete installation of the following. Painting and Vinyl wall Covering Installation (Vinyl Wall Covering to be purchased by others). Per quotation from Robert Mariscal Painting to

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.



©1997 AIA®
AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

## ARTICLE 9  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**9.1**    The Subcontractor's date of commencement is the date from which the Contract Time of Paragraph 9.3 is measured; it shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Contractor.

*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

<u>November 1,2001, 2001and will be completed no later than January 10,2002.</u>

**9.2**    Unless the date of commencement is established by a notice to proceed issued by the Contractor, or the Contractor has commenced visible Work at the site under the Prime Contract, the Subcontractor shall notify the Contractor in writing not less than five days before commencing the Subcontractor's Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

**9.3**    The Work of this Subcontract shall be substantially completed not later than

*(Insert the calendar date or number of calendar days after the Subcontractor's date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Subcontractor's Work, if not stated elsewhere in the Subcontract Documents.)*

<u>January 10, 2002.</u>

, subject to adjustments of this Subcontract Time as provided in the Subcontract Documents.

*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*

<u>Liquidated Damages of One Hundred ($ 100.00) Dollars per Day.</u>

**9.4**    With respect to the obligations of both the Contractor and the Subcontractor, time is of the essence of this Subcontract.

**9.5**    No extension of time will be valid without the Contractor's written consent after claim made by the Subcontractor in accordance with Paragraph 5.3.

## ARTICLE 10    SUBCONTRACT SUM

**10.1**    The Contractor shall pay the Subcontractor in current funds for performance of the Subcontract the Subcontract Sum of <u>Twenty Eight Thousand 0/100</u> Dollars ($<u>28.000.00</u>), subject to additions and deductions as provided in the Subcontract Documents.

**10.2**    The Subcontract Sum is based upon the following alternates, if any, which are described in the Subcontract Documents and have been accepted by the Owner and the Contractor:

*(Insert the numbers or other identification of accepted alternates.)*

<u>None.</u>

**10.3**    Unit prices, if any, are as follows:

<u>None</u>

## ARTICLE 11    PROGRESS PAYMENTS

**11.1**    Based upon applications for payment submitted to the Contractor by the Subcontractor, corresponding to applications for payment submitted by the Contractor to the Architect, and certificates for payment issued by the Architect, the Contractor shall make progress payments on account of the Subcontract Sum to the Subcontractor as provided below and elsewhere in the Subcontract Documents. Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor and Subcontractor for Work properly performed by their contractors and suppliers shall be held by the Contractor and Subcontractor for those contractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor or Subcontractor for which payment was made to the Contractor by the Owner or to the

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.*



©1997 AIA®
AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR
AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

Subcontractor by the Contractor, as applicable. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor or Subcontractor, shall create any fiduciary liability or tort liability on the part of the Contractor or Subcontractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor or Subcontractor for breach of the requirements of this provision.

**11.2**    The period covered by each application for payment shall be one calendar month ending on the last day of the month, or as follows:
<u>As Stated Above.</u>

**11.3**    Provided an application for payment is received by the Contractor not later than the <u>25th</u> day of a month, the Contractor shall include the Subcontractor's Work covered by that application in the next application for payment which the Contractor is entitled to submit to the Architect. The Contractor shall pay the Subcontractor each progress payment within three working days after the Contractor receives payment from the Owner. If the Architect does not issue a certificate for payment or the Contractor does not receive payment for any cause which is not the fault of the Subcontractor, the Contractor shall pay the Subcontractor, on demand, a progress payment computed as provided in Paragraphs 11.7, 11.8 and 11.9.

**11.4**    If an application for payment is received by the Contractor after the application date fixed above, the Subcontractor's Work covered by it shall be included by the Contractor in the next application for payment submitted to the Architect.

**11.5**    Each application for payment shall be based upon the most recent schedule of values submitted by the Subcontractor in accordance with the Subcontract Documents. The schedule of values shall allocate the entire Subcontract Sum among the various portions of the Subcontractor's Work and be prepared in such form and supported by such data to substantiate its accuracy as the Contractor may require. This schedule, unless objected to by the Contractor, shall be used as a basis for reviewing the Subcontractor's applications for payment.

**11.6**    Applications for payment submitted by the Subcontractor shall indicate the percentage of completion of each portion of the Subcontractor's Work as of the end of the period covered by the application for payment.

**11.7**    Subject to the provisions of the Subcontract Documents, the amount of each progress payment shall be computed as follows:

**11.7.1**    Take that portion of the Subcontract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Subcontractor's Work by the share of the total Subcontract Sum allocated to that portion of the Subcontractor's Work in the schedule of values, less that percentage actually retained, if any, from payments to the Contractor on account of the Work of the Subcontractor. Pending final determination of cost to the Contractor of changes in the Work which have been properly authorized by the Contractor, amounts not in dispute shall be included to the same extent provided in the Prime Contract, even though the Subcontract Sum has not yet been adjusted;

**11.7.2**    Add that portion of the Subcontract Sum properly allocable to materials and equipment delivered and suitably stored at the site by the Subcontractor for subsequent incorporation in the Subcontractor's Work or, if approved by the Contractor, suitably stored off the site at a location agreed upon in writing, less the same percentage retainage required by the Prime Contract to be applied to such materials and equipment in the Contractor's application for payment;

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.*

©1997 AIA©
AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR
AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

11

**11.7.3**  Subtract the aggregate of previous payments made by the Contractor; and

**11.7.4**  Subtract amounts, if any, calculated under Subparagraph 11.7.1 or 11.7.2 which are related to Work of the Subcontractor for which the Architect has withheld or nullified, in whole or in part, a certificate of payment for a cause which is the fault of the Subcontractor.

**11.8**    Upon the partial or entire disapproval by the Contractor of the Subcontractor's application for payment, the Contractor shall provide written notice to the Subcontractor. When the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld.

**11.9    SUBSTANTIAL COMPLETION**

**11.9.1**  When the Subcontractor's Work or a designated portion thereof is substantially complete and in accordance with the requirements of the Prime Contract, the Contractor shall, upon application by the Subcontractor, make prompt application for payment for such Work. Within 30 days following issuance by the Architect of the certificate for payment covering such substantially completed Work, the Contractor shall, to the full extent allowed in the Prime Contract, make payment to the Subcontractor, deducting any portion of the funds for the Subcontractor's Work withheld in accordance with the certificate to cover costs of items to be completed or corrected by the Subcontractor. Such payment to the Subcontractor shall be the entire unpaid balance of the Subcontract Sum if a full release of retainage is allowed under the Prime Contract for the Subcontractor's Work prior to the completion of the entire Project. If the Prime Contract does not allow for a full release of retainage, then such payment shall be an amount which, when added to previous payments to the Subcontractor, will reduce the retainage on the Subcontractor's substantially completed Work to the same percentage of retainage as that on the Contractor's Work covered by the certificate.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING 'AIA DOCUMENT D401.*

*This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc*

**ARTICLE 12    FINAL PAYMENT**

**12.1**    Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner. If, for any cause which is not the fault of the Subcontractor, a certificate for payment is not issued or the Contractor does not receive timely payment or does not pay the Subcontractor within three working days after receipt of payment from the Owner, final payment to the Subcontractor shall be made upon demand.
*(Insert provisions for earlier final payment to the Subcontractor, if applicable.)*
<u>Final Payment Upon Release of Retainage By Owner to Contractor.</u>

**12.2**    Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.



**ARTICLE 13    INSURANCE AND BONDS**

**13.1**    The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

| | |
|---|---|
| <u>General Liability</u> | <u>$ 1,000,000</u> |
| <u>Products-COM/OP AGG</u> | <u>$ 1,000,000</u> |
| <u>Personal & ADV. Injury</u> | <u>$ 500,000</u> |
| <u>Each Occurrence</u> | <u>$ 500,000</u> |
| <u>Fire Damages (Any on Fire)</u> | <u>$ 50,000</u> |
| <u>Medical Exp. (Any one Person)</u> | <u>$ 5,000</u> |
| <u>Auto Liability (Combined Single Limit)</u> | <u>$ 500,000</u> |
| <u>Workers Comp. & Employer's Liability-Statutory Limits</u> | |

©1997 AIA®
AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR
AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

Contractor is named as additional insured on all coverages except for Workers Compensation.

All policies except liability shall contain waiver of subrogation in favor of contractor.

**13.2** Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Subcontractor's Work until date of final payment and termination of any coverage required to be maintained after final payment to the Subcontractor.

**13.3** Certificates of insurance acceptable to the Contractor shall be filed with the Contractor prior to commencement of the Subcontractor's Work. These certificates and the insurance policies required by this Article 13 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment as required in Article 12. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Subcontractor with reasonable promptness according to the Subcontractor's information and belief.

**13.4** The Contractor shall furnish to the Subcontractor satisfactory evidence of insurance required of the Contractor under the Prime Contract.

**13.5** The Contractor shall promptly, upon request of the Subcontractor, furnish a copy or permit a copy to be made of any bond covering payment of obligations arising under the Subcontract.

**13.6** Performance Bond and Payment Bond:
*(If the Subcontractor is to furnish bonds, insert the specific requirements here.)*
Not Applicable.

**13.7 PROPERTY INSURANCE**
**13.7.1** When requested in writing, the Contractor shall provide the Subcontractor with copies of the property and equipment policies in effect for the Project. The Contractor shall notify the Subcontractor if the required property insurance policies are not in effect.

**13.7.2** If the required property insurance is not in effect for the full value of the Subcontractor's Work, then the Subcontractor shall purchase insurance for the value of the Subcontractor's Work, and the Subcontractor shall be reimbursed for the cost of the insurance by an adjustment in the Subcontract Sum.

**13.7.3** Property insurance for the Subcontractor's materials and equipment required for the Subcontractor's Work, stored off site or in transit and not covered by the Project property insurance, shall be paid for through the application for payment process.

**13.8 WAIVERS OF SUBROGATION**
**13.8.1** The Contractor and Subcontractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Owner, the Architect, the Architect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property insurance provided under the Prime Contract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by the Owner as a fiduciary. The Subcontractor shall require of the Subcontractor's Sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of the parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.*

©1997 AIA®
AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

## ARTICLE 14    TEMPORARY FACILITIES AND WORKING CONDITIONS

**14.1**    The Contractor shall furnish and make available to the Subcontractor the following temporary facilities, equipment and services; these shall be furnished at no cost to the Subcontractor unless otherwise indicated below:
**Portable Toilet, & Dumpster.**

**14.2**    Specific working conditions:
*(Insert any applicable arrangements concerning working conditions and labor matters for the Project.)*
**None.**

## ARTICLE 15    MISCELLANEOUS PROVISIONS

**15.1**    Where reference is made in this Subcontract to a provision of another Subcontract Document, the reference refers to that provision as amended or supplemented by other provisions of the Subcontract Documents.

**15.2**    Payments due and unpaid under this Subcontract shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*
**None.**                                                                                    ‒

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's, Contractor's and Subcontractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**15.3**    Retainage and any reduction thereto is as follows:
**Retainage of Ten (10%) Percent will be retained until the Owner releases the Retainage held on the Contractor.**

**15.4**    The Contractor and Subcontractor waive claims against each other for consequential damages arising out of or relating to this Subcontract, including without limitation, any consequential damages due to either party's termination in accordance with Article 7.

## ARTICLE 16    ENUMERATION OF SUBCONTRACT DOCUMENTS

**16.1**    The Subcontract Documents, except for Modifications issued after execution of this Subcontract, are enumerated as follows:

**16.1.1**    This executed 1997 edition of the Standard Form of Agreement Between Contractor and Subcontractor, AIA Document A401-1997;

**16.1.2**    The Prime Contract, consisting of the Agreement between the Owner and Contractor dated as first entered above and the other Contract Documents enumerated in the Owner-Contractor Agreement;

**16.1.3**    The following Modifications to the Prime Contract, if any, issued subsequent to the execution of the Owner-Contractor Agreement but prior to the execution of this Agreement:

Modification                                                                    Date

**None.**

**16.1.4**    Other Documents, if any, forming part of the Subcontract Documents are as follows:
*(List any additional documents that are intended to form part of the Subcontract Documents. Requests for proposal and the Subcontractor's bid or proposal should be listed here only if intended to be part of the Subcontract Documents.)*

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.*



©1997 AIA®
**AIA DOCUMENT A401 - 1997**
CONTRACTOR – SUBCONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia – 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

This Agreement entered into as of the day and year first written above.

_____          _____
**CONTRACTOR** *(Signature)*          **SUBCONTRACTOR** *(Signature)*

<u>Thearl C. Adams</u>
<u>Project Manager</u>
_____          _____
*(Printed name and title)*            *(Printed name and title)*

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.*



©1997 AIA®
AIA DOCUMENT A401 - 1997
CONTRACTOR – SUBCONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1925, 1937, 1951, 1958, 1961, 1966, 1967, 1972, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. expiration as noted below. User Document: 97a401robert mariscal gsa.aia -- 10/18/2001. AIA License Number 1019006, which expires on 3/5/2002.

15

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS
On: May 20,2002 at 04:03P

Document Number:      00027050

By
Mel Perez
Joe G Rivera, County Clerk
Cameron County

LAW OFFICE OF

# JOHN KING

3409 NORTH 10TH, SUITE 100
McALLEN, TEXAS 78501
(956) 687-6294

JOHN ROBERT KING
  BOARD CERTIFIED
    CIVIL TRIAL LAW
    FAMILY LAW
    COMMERCIAL REAL ESTATE LAW
    RESIDENTIAL REAL ESTATE LAW
    FARM AND RANCH REAL ESTATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

ROBIN C. CROW
  BOARD CERTIFIED — FAMILY LAW
  TEXAS BOARD OF LEGAL SPECIALIZATION

MICHAEL STEVEN DECK

FAX 956 687-5514

May 17, 2002

*CERTIFIED MAIL, RETURN RECEIPT REQUESTED*
*AND REGULAR MAIL*

*Via CRRR No. 7001 2510 0008 6861 2968*
Browndrew, L.L.P.
1333 N. Kingsberry
Chicago, Illinois 60622

Re:    Construction of Building located at 1735 Coffee Port Road, Brownsville, Texas

Dear Sir or Madam:

    This firm represents Robert Mariscal Painting. Robert Mariscal Painting contracted with Triad Builders, Inc., the general contractor of the building erected at 1735 Coffee Port Road, Brownsville, Texas 78521 and owned by your firm, for Robert Mariscal Painting to supply the labor and materials for taping, bedding, painting and wallpapering the building at that location. Although the job was completed by Robert Mariscal Painting in March, 2002, Robert Mariscal Painting has not been paid any monies by Triad Builders, Inc.

    Demand is hereby made for the amount of $28,000.00, as the contract amount owed by your general contractor to Robert Mariscal Painting.

    Enclosed are copies of the invoices given to Triad Builders, Inc. by Robert Mariscal Painting.

    Also enclosed is an affidavit for mechanics and materialmans lien which will be filed in the official records of Cameron County, Texas.

    Do not hesitate to contact me should you desire to discuss this matter.

Very truly yours,

M. STEVEN DECK

cc:    Triad Builders, Inc., 2300 West Pike Blvd., Suite 204, Weslaco, Texas 78596

Exhibit "B"

**SENDER: *COMPLETE THIS SECTION***

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Browndrew, LL P

1333 N. Kingoberry

Chicago, Ill. 60622

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  G. Grisson          ☐ Agent
                       ☐ Addressee

B. Received by ( Printed Name)     C. Date of D
                                   6-2

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

Marisol

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☑ Return Receipt for Mercha
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2.

7001 2510 0008 6861 2968

PS Form 3811, August 2001          Domestic Return Receipt          102595-01

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7001 2510 0008 6861 2968

Browndrew,

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

5/17/02
Postmark
Here

Sent To

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

PS Form 3800, January 2001          See Reverse for Instructions