89

United States District Court
Southern District of Texas
FILED

OCT 17 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

BROWNDREW, L.L.C. §
  Plaintiff, §
§
V. §
§
§   CIVIL ACTION NO.
TRIAD BUILDERS, INC.; ELSA STATE §   B-02-137
BANK & TRUST CO.; G & T PAVING CO.; §
AQUA TECH; VILLANUEVA FENCE & §   **JURY**
SUPPLY CO.; VALLEY BUILDERS CO.; §
ROBERT'S WELDING & FABRICATORS, §
INC.; BOWMAN DISTRIBUTING COMPANY §
INC.; OMEGA SYSTEMS; GALVAN SHEET §
METAL SHOP; RAYMOND ROOFING, INC.; §
EDMANN'S COMMERCIAL REFRIGER- §
ATION & A/C; SKIPPER'S REPAIR §
PLUMBING; RZB INC., d/b/a GLOBAL §
ELECTRIC; LIFETIME INDUSTRIES; §
BEN'S GLASS AND METAL; KENMARK, §
INC.; GABRIEL ALCANTAR; ALFREDO §
GUTIERREZ; M&M COMMERCIAL LAWN §
SERVICES, INC.; G.D. LOZANO; KEVIN §
COMIER; JCO SPECIALISTS; OPENING §
SPECIALTIES AND SUPPLY, INC.; DAL- §
TILE CORPORATION; DEA SPECIALTIES §
CO., LTD.; LCM MANAGEMENT CO., INC. §
d/b/a SOUTH TEXAS FLAG; STAR BUILDING §
SYSTEMS; MARIO MARON; D&B GENERAL §
CLEANING; G.T. BLINDS, INC.; ROBERT §
MARISCAL; THE SHERWIN-WILLIAMS §
COMPANY; THE STRIPING COMPANY; §
ROBERTO GOMEZ; A&J PAVING; HOPE §
LUMBER & SUPPLY CO., L.P.; CONSOL- §
IDATED ELECTRIC DISTRIBUTORS, INC.; §
PALMVIEW GLASS & MIRROR, INC.; and §
FINANCIAL INVESTMENTS, INC., §
  Defendants. §

## ELSA STATE BANK'S STATEMENT OF CLAIM

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW ELSA STATE BANK (hereafter ESB) and files this its Statement of Claim pursuant to order of the Court and for such would show unto the Court as follows:

## A.

## FACTS IN SUPPORT OF CLAIM

1.      On or about June 4, 2001, plaintiff and defendant Triad entered into a contract (hereinafter "contract") for the construction of a building.  See attached Exhibit 1.

2.      On or about June 27, 2002, Elsa State Bank loaned $200,025.00 to Triad which funds were utilized with regard to the contract between Triad and Browndrew.  See attached Exhibit 2.  Elsa State Bank secured the loan with an assignment of Triad's right to receive payment on the contract.  See attached Exhibit 2.

3.      On or about July 12, 2001, Browndrew agreed by letter to pay Elsa State Bank per its assignment.  See attached Exhibit 3.

4.      Elsa State Bank filed a UCC -1 on December 3, 2001, perfecting its secured claim by describing the assignment of proceeds payable under the Browndrew/Triad contract. See attached as Exhibit 4.

5.      On September 13, 2002, Triad filed an affidavit claiming lien in the amount of $292,941.55 which reflects the amount owed under the contract and includes change orders that are owed under the contract.  See attached as Exhibit 5.

6.      ESB is currently owed $95,875.87 by Triad.

## B.

## LEGAL BASIS FOR CLAIM

7.      Browndrew has disclaimed any interest in the contract funds that it has been

ordered to deposit into the registry of the Court. For a party to be entitled to receive interplead proceeds, they must be able to show that they would have a viable claim against the stakeholder and against the stake.

8.    The only basis under which any subcontractor or supplier in this case would have a claim to the stake is if they can establish that they have properly perfected their right to the proceeds. Under Texas law, subcontractors or suppliers that do not have a contract with the owner must meet the requirements of Chapter 53 of the Texas Property Code before the owner has liability to them. Among other requirements, the subcontractors or suppliers must timely record a lien in the County records. To the extent that any of the parties in this case failed to timely provide notices or timely record mechanic's and material man's liens, they would have an underlined unsecured claim against Triad, and no claim against Browndrew. These unsecured parties would also have no claim against the interplead funds. ESB affirmatively asserts that the liens of many of its co-defendants in interpleader are not properly perfected.

9.    ESB's claim is based upon the assignment (of the right to receive proceeds from the Browndrew contract) that it received from Triad on June 27, 2002. Under its contract with Triad, the amount not yet paid under the contract according to Browndrew equals $258,349.62 (which is the amount that has been interplead). ESB obtained a security interest in these proceeds when it loaned money to Triad (See Exhibit 2), and ESB perfected its security interest when it filed a UCC-1 relating to this security. (See Exhibit 4). Consequently, as a secured creditor, ESB stands in front of all unsecured creditors (subcontractors and suppliers who failed to timely provide lien notices and record liens). ESB is entitled to the balance of any interplead funds remaining (up to the amount it is

owed by Triad) after subtracting any amounts from the interplead funds paid to

subcontractors who have properly perfected their liens under Texas law.

10.    ESB has also asserted a separate cause of action against Browndrew for paying

subcontractors directly rather than through ESB and Triad in violation of ESB's agreement

with Browndrew.  Further, ESB has asserted a claim against Browndrew for the cost of

change orders performed by Triad which amount has not been interplead by Browndrew.

Respectfully submitted,

JONES, GALLIGAN, KEY & LOZANO, L.L.P.
Town Center Tower, Suite 300
2300 West Pike Boulevard
Post Office Drawer 1247
Weslaco, Texas 78599-1247
Telephone: (956) 968-5402
Telecopier: (956) 969-9402

By: _____
LANCE A. KIRBY
Federal I.D No.: 21811
State Bar No.: 00794096

Of Counsel:

TERRY D. KEY
Federal I.D. No.: 1205
State Bar No.: 11370200
JONES, GALLIGAN, KEY & LOZANO, L.L.P.
Town Center Tower, Suite 300
2300 West Pike Boulevard
Post Office Drawer 1247
Weslaco, Texas 78599-1247
Telephone: (956) 968-5402
Telecopier: (956) 969-9402

**ATTORNEYS FOR DEFENDANT**
**ELSA STATE BANK & TRUST CO.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following attorneys on the _17th_ day of October, 2002:

William L. Rentfro
RENTFRO, FAULK, & BLAKEMORE, L.L.P.
185 E. Ruben Torres Blvd.
Brownsville, Texas 78520
Telephone: (956) 541-9600
Telecopier: (956) 541-3414
**Attorney for Plaintiff**

Gregory E. Turley
ATTORNEY AT LAW
504 E. Dove Ave., Suite B
McAllen, Texas 78504
Telephone: (956) 682-8531
Telecopier: (956) 682-9533
**Attorneys for The Sherwin-Williams
Company**

G.D. Lozano
P.O. Box 854
La Feria, Texas 78559
**Pro-Se**

Jerry L. Stapleton
STAPLETON, CURTIS & BOSWELL
515 E. Harrison, Ste. A
Harlingen, Texas 78550
Telephone: (956) 428-9191
Telecopier: (956) 428-9283
**Attorneys for Bowman Distributing Co., Inc.**

Marshall R. Ray
Elizabeth Guerrero
RANSOME & RAY, P.C.
550 E. Levee St.
Brownsville, Texas 78520
Telephone: (956) 542-3642
Telecopier: (956) 542-3698
**Attorneys for Skipper's Repair Plumbing**

Robert L. Eden
MATTHEWS, CARLTON, STEIN, SHIELS, PEARCE
 & KNOTT
8131 LBJ Freeway Ste. 700
Dallas, Texas 75251
Telephone: (972) 234-3400
Telecopier: (972) 234-1750
**Consolidated Electrical Distributors, Inc.**

Mauro L. Reyna, III
LAW OFFICE OF MAURO L. REYNA, III
P.O. Box 969
Penitas, Texas 78576
Telephone: (956) 584-7822
Telecopier: (956) 584-8718
**Attorneys for Robert Cardenas, Jr. d/b/a
Robert's Welding & Fabricators, Inc.**

Sam Drugan
Marshall L. Armstrong
WARREN, DRUGAN & BARROWS
800 Broadway
San Antonio, Texas 78215
Telephone: (210) 226-4131
Telecopier: (210) 224-6488
**Attorneys for D.E.A. Specialties Co., LTD**

M. Steven Deck
LAW OFFICE OF JOHN KING
3409 N. 10th St., Ste. 100
McAllen, Texas 78501
Telephone: (956) 687-6294
Telecopier: (956) 687-5514
**Attorneys for Robert Mariscal**

Daniel G. Rios
LIFETIME INDUSTRIES, INC.
323 Nolana
McAllen, Texas 78504
Telephone: (956) 630-9401
Telecopier: (956) 682-0566
**Attorneys for Lifetime Industries, Inc.**

Thomas J. Walthall, Jr.
Brad L. Sklencar
THE GARDNER LAW FIRM
745 E. Mulberry, Suite 100
San Antonio, Texas 78212
Telephone: (210) 733-8191
Telecopier: (210) 733-5538
**Attorneys for RZB, Inc., d/b/a Global Electric**

Brittany L. Wills
Mark W. Walker
WALKER & TWENHAFEL, L.L.P.
P.O. Drawer 3766
McAllen, Texas 78502-3766
Telephone: (956) 687-6225
Telecopier: (956) 686-1276
**Attorneys for Opening Specialties and
Supply, Inc.**

Alfredo Padilla
ATTORNEY AT LAW
1000 E. Van Buren
Brownsville, Texas 78520
Telephone: (956) 544-7100
Telecopier: (956) 544-0647
**Attorney for Alfredo Gutierrez and Gabriel
Alcantar**

Eduardo Martinez
EDMANN'S COMMERCIAL
REFRIGERATION AND A/C
705 S. San Antonio
San Juan, Texas 78589
**Pro-Se**

Michael A. McGurk
KITTLEMAN, THOMAS, RAMIREZ & GONZALEZ
4900-B North Tenth
McAllen, Texas 78504
Telephone: (956) 686-8797
Telecopier: (956) 630-5199
**Attorneys for Hope Lumber &
Supply Company, L.P.**

Robert F. Evans
AQUA TECH
4305 N. 10th
McAllen, Texas 78504
**Pro-Se**

Abel Gonzalez
G&T PAVING COMPANY
P.O. Box 5136
Brownsville, Texas 78520
**Pro-Se**

Curtis Bonner
BONNER & BONNER
P.O. Box 288
Harlingen, Texas 78551
Telephone: (956) 423-9152
Telecopier: (956) 428-0671
**Attorneys for M&M Commercial Lawn
Services**

John Skaggs
LAW OFFICE OF JOHN SKAGGS
P.O. Drawer 2285
710 Laurel
McAllen, Texas 78502-2285
Telephone: (956) 687-8216
Telecopier: (956) 630-6570
**Attorneys for LCM Management Co., Inc.**

Antonio Villeda
LAW OFFICE OF ANTONIO VILLEDA
5414 North 10th Street
McAllen, Texas 78504
Telephone: (956) 631-9100
Telecopier: (956) 631-9146
**Attorney for Encinal Investments, Inc. and as
Assignee to Palm Valley Glass and Mirror,
Inc.**

LANCE A. KIRBY

1997 Edition - Electronic Format

AIA Document A111 - 1997

# Standard Form of Agreement Between Owner and Contractor

*where the basis for payment is the COST OF THE WORK PLUS A FEE with a negotiated Guaranteed Maximum Price*

**AGREEMENT** made as of the <u>Fourth</u> day of <u>June</u> in the year <u>2001</u>
*(In words, indicate day, month and year)*

**BETWEEN the Owner:**
*(Name, address and other information)*
<u>BROWNDREW, LLC</u>
<u>656 W. Randolph St. Suite 400</u>
<u>Chicago, Illinois 60661</u>

**and the Contractor:**
*(Name, address and other information)*
<u>Triad Builder, Inc.</u>
<u>2300 W. Pike Blvd., Suite 204</u>
<u>Weslaco, Texas 78596</u>

**The Project is:**
*(Name and location)*
<u>SSA - Brownsville, The Drew Group, Lease Construct</u>
<u>1735 Coffeeport Road</u>
<u>Brownsville, Texas 78521</u>

**The Architect is:**
*(Name, address and other information)*
<u>Valerio, Dewalt, Train Associates, Inc.</u>
<u>500 North Dearborn, 9th Floor</u>
<u>Chicago, Illinois 60610</u>

The Owner and Contractor agree as follows.

## ARTICLE 1 THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 15. If anything in the other Contract Documents is inconsistent with this Agreement, this Agreement shall govern.

## ARTICLE 2 THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3 RELATIONSHIP OF THE PARTIES

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document is not intended for use in competitive bidding.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A111 - 1997
OWNER - CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1920, 1925, 1951, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject he violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: drew group ss building.aia -- 6/22/2001. AIA License Number 1019006, which expires on 3/5/2002.

1

**EXHIBIT**

The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

## ARTICLE 4  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**4.1** The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*
The date of commencement shall at least.
Five (5) Days after City of Brownsville issues a Building Permit on this project to Triad Builders, Inc.

If, prior to commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

**4.2** The Contract Time shall be measured from the date of commencement.

**4.3** The Contractor shall achieve Substantial Completion of the entire Work not later than One hundred eighty (180) days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time, or for bonus payments for early completion of the Work.)*
No liquidated damages. No early completion bonus.

## ARTICLE 5  BASIS FOR PAYMENT

### 5.1  CONTRACT SUM

**5.1.1**  The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Contractor's Fee.

**5.1.2**  The Contractor's Fee is:
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee, and describe the method of adjustment of the Contractor's Fee for changes in the Work.)*
One Hundred Thousand ($ 100,000.00) plus 9.24% of the cost of any Change Orders.

### 5.2 GUARANTEED MAXIMUM PRICE

**5.2.1**  The sum of the Cost of the Work and the Contractor's Fee is guaranteed by the Contractor not to exceed One Million One Hundred Forty Five Thousand Nine Hundred Ninety Dollars  ($ 1,145,990.00 ), subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner.

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document is not intended for use in competitive bidding.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A111 - 1997
OWNER - CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1920, 1925, 1951, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: drew group ss building.aia – 6/22/2001. AIA License Number 1019006, which expires on 3/5/2002.

*(Insert specific provisions if the Contractor is to participate in any savings.)*
Shared Savings on total Cost of Work shall be divided equally between Contractor and Owner.
50% Brown Drew LLC
50% Triad Builders, Inc.

**5.2.2** The Guaranteed Maximum Price is based on the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner.
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when the amount expires.)*
No Alternates

**5.2.3** Unit prices, if any, are as follows:
Brick Purchase $ 375.00/1,000 pcs.

**5.2.4** Allowances, if any, are as follows:
*(Identify and state the amounts of any allowances, and state whether they include labor, materials, or both.)*
No Allowances

**5.2.5** Assumptions, if any, on which the Guaranteed Maximum Price is based are as follows:
The( Items in Value and Engineering) as shown in Exhibit "B" are excepted and will be incorporated into the Drawing and Specification. In the event there are additional revision to the Drawings and Specification, the Contractor and Owner shall agree to and appropriate modifications of the Guaranteed Maximum Price.

**5.2.6** To the extent that the Drawings and Specifications are anticipated to require further development by the Architect, the Contractor has provided in the Guaranteed Maximum Price for such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

## ARTICLE 6   CHANGES IN THE WORK

**6.1** Adjustments to the Guaranteed Maximum Price on account of changes in the Work may be determined by any of the methods listed in Subparagraph 7.3.3 of AIA Document A201-1997.

**6.2** In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Clause 7.3.3.3 of AIA Document A201-1997 and the terms "costs" and "a reasonable allowance for overhead and profit" as used in Subparagraph 7.3.6 of AIA Document A201-1997 shall have the meanings assigned to them in AIA Document A201-1997 and shall not be modified by Articles 5, 7 and 8 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

**6.3** In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in the above-referenced provisions of AIA Document A201-1997 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the terms "fee" and "a reasonable allowance for overhead and profit" shall mean the Contractor's Fee as defined in Subparagraph 5.1.2 of this Agreement.

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document is not intended for use in competitive bidding.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A111 - 1997
OWNER - CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1920, 1925, 1951, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject he violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: drew group ss building.aia – 6/22/2001. AIA License Number 1019006, which expires on 3/5/2002.

6.4 If no specific provision is made in paragraph 5.1 for adjustment of the Contractor's fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Paragraph 5.1 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the basis of the Fee established for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

## ARTICLE 7  COSTS TO BE REIMBURSED

### 7.1 COST OF THE WORK

The term Cost of the Work shall mean costs necessarily incurred by the Contractor in the proper performance of the Work. Such costs shall be at rates not higher than the standard paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 7.

### 7.2 LABOR COSTS

7.2.1   Wages of construction workers directly employed by the Contractor to perform the construction of the Work at the site or, with the Owner's approval, at off-site workshops.

7.2.2   Wages or salaries of the Contractor's supervisory and administrative personnel when stationed at the site with the Owner's approval.

*(If it is intended that the wages or salaries of certain personnel stationed at the Contractor's principal or other offices shall be included in the Cost of the Work, identify in Article 14 the personnel to be included and whether for all or only part of their time, and the rates at which their time will be charged to the Work.)*

<u>Job Superintendent $ 600.00/wk. full time.</u>
<u>Project Manager $ 18.75/hr. Part time.</u>

7.2.3   Wages and salaries of the Contractor's supervisory or administrative personnel engaged at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

7.2.4   Costs paid or incurred by the Contractor for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Subparagraphs 7.2.1 through 7.2.3.

### 7.3 SUBCONTRACT COSTS

7.3.1   Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts.

### 7.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION

7.4.1   Costs, including transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction.

7.4.2   Costs of materials described in the preceding Subparagraph 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Contractor. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

### 7.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document is not intended for use in competitive bidding.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A111 - 1997
OWNER - CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1920, 1925, 1951, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject he violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: drew group ss building.aia – 6/22/2001. AIA License Number 1019006, which expires on 3/5/2002.

**7.5.1**   Costs, including transportation and storage, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers, that are provided by the Contractor at the site and fully consumed in the performance of the Work; and cost (less salvage value) of such items if not fully consumed, whether sold to others or retained by the Contractor. Cost for items previously used by the Contractor shall mean fair market value.

**7.5.2**   Rental charges for temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers that are provided by the Contractor at the site, whether rented from the Contractor or others, and costs of transportation, installation, minor repairs and replacements, dismantling and removal thereof. Rates and quantities of equipment rented shall be subject to the Owner's prior approval.

**7.5.3**   Costs of removal of debris from the site.

**7.5.4**   Costs of document reproductions, facsimile transmissions and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses of the site office.

**7.5.5**   That portion of the reasonable expenses of the Contractor's personnel incurred while traveling in discharge of duties connected with the Work.

**7.5.6**   Costs of materials and equipment suitably stored off the site at a mutually acceptable location, if approved in advance by the Owner.

## 7.6 MISCELLANEOUS COSTS

**7.6.1**   That portion of insurance and bond premiums that can be directly attributed to this Contract:

**7.6.2**   Sales, use or similar taxes imposed by a governmental authority that are related to the Work.

**7.6.3**   Fees and assessments for the building permit and for other permits, licenses and inspections for which the Contractor is required by the Contract Documents to pay.

**7.6.4**   Fees of laboratories for tests required by the Contract Documents, except those related to defective or nonconforming Work for which reimbursement is excluded by Subparagraph 13.5.3 of AIA Document A201-1997 or other provisions of the Contract Documents, and which do not fall within the scope of Subparagraph 7.7.3.

**7.6.5**   Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement of the Contract Documents; and payments made in accordance with legal judgments against the Contractor resulting from such suits or claims and payments of settlements made with the Owner's consent. However, such costs of legal defenses, judgments and settlements shall not be included in the calculation of the Contractor's Fee or subject to the Guaranteed Maximum Price. If such royalties, fees and costs are excluded by the last sentence of Subparagraph 3.17.1 of AIA Document A201-1997 or other provisions of the Contract Documents, then they shall not be included in the Cost of the Work.

**7.6.6**   Data processing costs related to the Work.

**7.6.7**   Deposits lost for causes other than the Contractor's negligence or failure to fulfill a specific responsibility to the Owner as set forth in the Contract Documents.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document is not intended for use in competitive bidding.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A111 - 1997
OWNER - CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1920, 1925, 1951, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: drew group ss building.aia – 6/22/2001. AIA License Number 1019006, which expires on 3/5/2002.

**7.6.8**  Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Contractor, reasonably incurred by the Contractor in the performance of the Work and with the Owner's prior written approval; which approval shall not be unreasonably withheld.

**7.6.9**  Expenses incurred in accordance with the Contractor's standard personnel policy for relocation and temporary living allowances of personnel required for the Work, if approved by the Owner.

## 7.7 OTHER COSTS AND EMERGENCIES

**7.7.1**  Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

**7.7.2**  Costs due to emergencies incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Paragraph 10.6 of AIA Document A201-1997.

**7.7.3**  Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Contractor and only to the extent that the cost of repair or correction is not recoverable by the Contractor from insurance, sureties, Subcontractors or suppliers.

## ARTICLE 8  COSTS NOT TO BE REIMBURSED

**8.1** The Cost of the Work shall not include:

**8.1.1**  Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Subparagraphs 7.2.2 and 7.2.3 or as may be provided in Article 14.

**8.1.2**  Expenses of the Contractor's principal office and offices other than the site office.

**8.1.3**  Overhead and general expenses, except as may be expressly included in Article 7.

**8.1.4**  The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work.

**8.1.5**  Rental costs of machinery and equipment, except as specifically provided in Subparagraph 7.5.2.

**8.1.6**  Except as provided in Subparagraph 7.7.3 of this Agreement, costs due to the negligence or failure to fulfill a specific responsibility of the Contractor, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable.

**8.1.7**  Any cost not specifically and expressly described in Article 7.

**8.1.8**  Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded.

## ARTICLE 9  DISCOUNTS, REBATES AND REFUNDS

**9.1** Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included them in an Application for Payment and received payment therefor from the Owner, or (2) the Owner has deposited

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document is not intended for use in competitive bidding.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A111 - 1997
OWNER - CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1920, 1925, 1951, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: drew group ss building.aia – 6/22/2001. AIA License Number 1019006, which expires on 3/5/2002.

funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be secured.

**9.2**     Amounts that accrue to the Owner in accordance with the provisions of Paragraph 9.1 shall be credited to the Owner as a deduction from the Cost of the Work.

## ARTICLE 10 SUBCONTRACTS AND OTHER AGREEMENTS

**10.1**     Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or by other appropriate agreements with the Contractor. The Owner may designate specific persons or entities from whom the Contractor shall obtain bids. The Contractor shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated especially for the Work and shall deliver such bids to the Architect. The Owner shall then determine, with the advice of the Contractor and the Architect, which bids will be accepted. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

**10.2**     If a specific bidder among those whose bids are delivered by the Contractor to the Architect (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Contractor may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

**10.3**     Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner.

## ARTICLE 11   ACCOUNTING RECORDS

The Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract, and the accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's accountants shall be afforded access to, and shall be permitted to audit and copy, the Contractor's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Contract, and the Contractor shall preserve these for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 12   PAYMENTS
### 12.1     PROGRESS PAYMENTS

**12.1.1**     Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

**12.1.2**     The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**12.1.3**     Provided that an Application for Payment is received by the Architect not later than the First day of a month, the Owner shall make payment to the Contractor not later than the Twentieth day of the Same month. If an Application for Payment is received by the

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document is not intended for use in competitive bidding.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
**AIA DOCUMENT A111 - 1997
OWNER - CONTRACTOR AGREEMENT**

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1920, 1925, 1951, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject he violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: drew group ss building.aia – 6/22/2001. AIA License Number 1019006, which expires on 3/5/2002.

Architect after the application date named above, payment shall be made by the Owner not later than <u>Twenty</u> days after the Architect receives the Application for Payment.

12.1.4   With each Application for Payment, the Contractor shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Contractor on account of the Cost of the Work equal or exceed (1) progress payments already received by the Contractor, less (2) that portion of those payments attributable to the Contractor's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

12.1.5   Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Contractor's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

12.1.6   Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work for which the Contractor has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

12.1.7   Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1   take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Subparagraph 7.3.8 of AIA Document A201-1997;

.2   add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

.3   add the Contractor's Fee, less retainage of <u>Ten</u> percent ( <u>10</u> %).The Contractor's Fee shall be computed upon the Cost of the Work described in the two preceding Clauses at the rate stated in Subparagraph 5.1.2 or, if the Contractor's Fee is stated as a fixed sum in that Subparagraph, shall be an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work in the two preceding Clauses bears to a reasonable estimate of the probable Cost of the Work upon its completion;

.4   subtract the aggregate of previous payments made by the Owner;

.5   subtract the shortfall, if any, indicated by the Contractor in the documentation required by Paragraph 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's accountants in such documentation; and

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document is not intended for use in competitive bidding.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A111 - 1997
OWNER - CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1920, 1925, 1951, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject he violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: drew group ss building.aia – 6/22/2001. AIA License Number 1019006, which expires on 3/5/2002.

.6    subtract amounts, if any, for which the Architect has withheld or nullified a
Certificate for Payment as provided in Paragraph 9.5 of AIA Document A201-1997.

12.1.8    Except with the Owner's prior approval, payments to Subcontractors shall be subject
to retainage of not less than <u>Ten</u> percent ( <u>10</u> %). The Owner and the Contractor shall agree
upon a mutually acceptable procedure for review and approval of payments and retention for
Subcontractors.

12.1.9    In taking action on the Contractor's Applications for Payment, the Architect shall be
entitled to rely on the accuracy and completeness of the information furnished by the
Contractor and shall not be deemed to represent that the Architect has made a detailed
examination, audit or arithmetic verification of the documentation submitted in accordance
with Subparagraph 12.1.4 or other supporting data; that the Architect has made exhaustive or
continuous on-site inspections or that the Architect has made examinations to ascertain how
or for what purposes the Contractor has used amounts previously paid on account of the
Contract. Such examinations, audits and verifications, if required by the Owner, will be
performed by the Owner's accountants acting in the sole interest of the Owner.

## 12.2    FINAL PAYMENT

12.2.1    Final payment, constituting the entire unpaid balance of the Contract Sum, shall be
made by the Owner to the Contractor when:

.1    the Contractor has fully performed the Contract except for the Contractor's
responsibility to correct Work as provided in Subparagraph 12.2.2 of AIA
Document A201-1997, and to satisfy other requirements, if any, which extend
beyond final payment; and

.2    a final Certificate for Payment has been issued by the Architect.

12.2.2    The Owner's final payment to the Contractor shall be made no later than 30 days
after the issuance of the Architect's final Certificate for Payment, or as follows:

12.2.3    The Owner's accountants will review and report in writing on the Contractor's final
accounting within 30 days after delivery of the final accounting to the Architect by the
Contractor. Based upon such Cost of the Work as the Owner's accountants report to be
substantiated by the Contractor's final accounting, and provided the other conditions of
Subparagraph 12.2.1 have been met, the Architect will, within seven days after receipt of the
written report of the Owner's accountants, either issue to the Owner a final Certificate for
Payment with a copy to the Contractor, or notify the Contractor and Owner in writing of the
Architect's reasons for withholding a certificate as provided in Subparagraph 9.5.1 of the AIA
Document A201-1997. The time periods stated in this Subparagraph 12.2.3 supersede those
stated in Subparagraph 9.4.1 of the AIA Document A201-1997.

12.2.4    If the Owner's accountants report the Cost of the Work as substantiated by the
Contractor's final accounting to be less than claimed by the Contractor, the Contractor shall
be entitled to demand arbitration of the disputed amount without a further decision of the
Architect. Such demand for arbitration shall be made by the Contractor within 30 days after
the Contractor's receipt of a copy of the Architect's final Certificate for Payment; failure to
demand arbitration within this 30-day period shall result in the substantiated amount reported
by the Owner's accountants becoming binding on the Contractor. Pending a final resolution
by arbitration, the Owner shall pay the Contractor the amount certified in the Architect's final
Certificate for Payment.

*THIS DOCUMENT HAS IMPORTANT LEGAL
CONSEQUENCES. CONSULTATION WITH AN
ATTORNEY IS ENCOURAGED WITH RESPECT
TO ITS COMPLETION OR MODIFICATION.
AUTHENTICATION OF THIS
ELECTRONICALLY DRAFTED AIA DOCUMENT
MAY BE MADE BY USING AIA DOCUMENT
D401.*

*This document is not intended for use in
competitive bidding.*

*AIA Document A201-1997, General
Conditions of the Contract for Construction,
is adopted in this document by reference.
Do not use with other general conditions
unless this document is modified.*

*This document has been approved and
endorsed by The Associated General
Contractors of America.*



©1997 AIA®
**AIA DOCUMENT A111 - 1997**
OWNER - CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1920, 1925, 1951, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects.
Reproduction of the material herein or substantial quotation of its provisions without written permission of
the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.
WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal
prosecution. This document was electronically produced with permission of the AIA and can be reproduced in
accordance with your license without violation until the date of expiration as noted below. User Document:
drew group ss building.aia -- 6/22/2001. AIA License Number 1019006, which expires on 3/5/2002.

12.2.5  If, subsequent to final payment and at the Owner's request, the Contractor incurs costs described in Article 7 and not excluded by Article 8 to correct defective or nonconforming Work, the Owner shall reimburse the Contractor such costs and the Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If the Contractor has participated in savings as provided in Paragraph 5.2, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Contractor.

## ARTICLE 13   TERMINATION OR SUSPENSION

13.1    The Contract may be terminated by the Contractor, or by the Owner for convenience, as provided in Article 14 of AIA Document A201-1997. However, the amount to be paid to the Contractor under Subparagraph 14.1.3 of AIA Document A201-1997 shall not exceed the amount the Contractor would be entitled to receive under Paragraph 13.2 below, ~~except that the Contractor's Fee shall be calculated as if the Work had been fully completed by the Contractor, including a reasonable estimate of the Cost of the Work for Work not actually completed.~~  TCa. 6-22-2001   26 June 01

13.2    The Contract may be terminated by the Owner for cause as provided in Article 14 of AIA Document A201-1997. The amount, if any, to be paid to the Contractor under Subparagraph 14.2.4 of AIA Document A201-1997 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

13.2.1   Take the Cost of the Work incurred by the Contractor to the date of termination;

13.2.2   Add the Contractor's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Subparagraph 5.1.2 or, if the Contractor's Fee is stated as a fixed sum in that Subparagraph, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and

13.2.3   Subtract the aggregate of previous payments made by the Owner.

13.3    The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Subparagraph 13.2.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 13, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

13.4    The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Subparagraph 14.3.2 of AIA Document A201-1997 except that the term "profit" shall be understood to mean the Contractor's Fee as described in Subparagraphs 5.1.2 and Paragraph 6.4 of this Agreement.

## ARTICLE 14   MISCELLANEOUS PROVISIONS

14.1    Where reference is made in this Agreement to a provision AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document is not intended for use in competitive bidding.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A111 - 1997
OWNER - CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1920, 1925, 1951, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject he violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: drew group ss building.aia – 6/22/2001. AIA License Number 1019006, which expires on 3/5/2002.

U.S. Government Lease for Real Pro    ty NO GS-07B-14931

15.1.5  The Drawings are as follows,    are dated unless a different date is shown be:
*(Either list the Drawings here or refer to an exhi.    .tached to this Agreement.)*

Number                          Title                          Date

See attached list of drawings. Exhibit "C"

15.1.6  The Addenda, if any, are as follows:

Number                     Date                          Pages

None

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 15.

15.1.7  Other Documents, if any, forming part of the Contract Documents are as follows:
*(List here any additional documents, such as a list of alternates that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

Exhibit "A" Project Schedule To be received by Thursday June 28, 2001.
Exhibit "B" Value Engineered Items.
Exhibit "C" List of Drawings.
Exhibit "D" Certificate of Insurance.
Exhibit "E" List of Exclusions.
Exhibit "F" Lease Agreement Between The Drew Group and GSA; items pertaining to construction.
Exhibit "G" Construction Budget.

## ARTICLE 16  INSURANCE AND BONDS
*(List required limits of liability for insurance and bonds. AIA Document A201-1997 gives other specific requirements for insurance and bonds.)*

Exhibit "D" Certificate of Insurance will follow by June  28, 2001.

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

OWNER *(Signature)*
MEMBER
BROWN DREW LLC
*(Printed name and title)*

26 June 01

Triad Builders, Inc.

CONTRACTOR *(Signature)*
Thearl C. Adams
Construction Manager
*(Printed name and title)*

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document is not intended for use in competitive bidding.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A111 - 1997
OWNER - CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1920, 1925, 1951, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject he violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: drew group ss building.aia -- 6/22/2001. AIA License Number 1019006, which expires on 3/5/2002.

14.2    Payments due and unpaid ...der the Contract shall bear interest from t... date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

14.3    The Owner's representative is:
*(Name, address and other information.)*
Thomas Boucher
656 W. Randolph St. Suite 400
Chicago, IL. 60661

14.4    The Contractor's representative is:
*(Name, address and other information.)*
Thearl Clay Adams
2300 W. Pike Blvd.. Suite 204
Weslaco, TX 78596

14.5    Neither the Owner's nor the Contractor's representative shall be changed without ten days' written notice to the other party.

14.6    Other provisions:
Exhibit "A" Project Schedule To be received by Thursday June 28. 2001.
Exhibit "B" Value Engineered Items.
Exhibit "C" List of Drawings.
Exhibit "D" Certificate of Insurance
Exhibit "E" Exclusions.
Exhibit "F" Lease Agreement Between The Drew Group and GSA; items pertaining to construction.
Exhibit "G" Construction Budget.

## ARTICLE 15    ENUMERATION OF CONTRACT DOCUMENTS

15.1    The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

15.1.1    The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A111-1997.

15.1.2    The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

15.1.3    The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated , and are as follows:

| Document | Title | Pages |
|---|---|---|

None

15.1.4    The Specifications are those contained in the Project Manual dated as in Subparagraph 15.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Section | Title | Pages |
|---|---|---|

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document is not intended for use in competitive bidding.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A111 - 1997
OWNER - CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1920, 1925, 1951, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject he violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: drew group ss building.aia – 6/22/2001. AIA License Number 1019006, which expires on 3/5/2002.

SEP-17-2002(TUE) 15:12    ESB INF CO-LOANS          (FAX)9E  J68 8831          P. 002/005

| | | |
|---|---|---|
| TRIAD BUILDERS, INC.<br>2300 W. PIKE BLVD.<br>WESLACO, TX 78596 | ELSA STATE BANK & TRUST CO.<br>WESLACO BANKING CENTER<br>203 E. BUSINESS 83, SUITE A<br>WESLACO TX 78596 | Loan Number  1118323 73<br>111832373<br>Date  Jun 27, 2001<br>Maturity Date Jan 23, 2002<br>Loan Amount $  200,025.00<br>Renewal Of  111832370 |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of _____

TWO HUNDRED THOUSAND TWENTY FIVE AND NO/100 _____ Dollars $ _____ 200,025.00

☐ **Single Advance:** I will receive all of this principal sum. No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On __06/27/2001__
_____ I will receive the amount of $ __125,020.00__ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum principal sum more than one time. This feature is subject to all other conditions and expires on _____ .

☒ **Closed End Credit:** You and I agree that I may borrow (subject to all other conditions) up to the maximum principal sum only one time.

**INTEREST:** I agree to pay interest on the outstanding principal balance from __June 27, 2001__ at the rate of __12.50__ per year until __January 23, 2002.__

☐ **Variable Rate:** This rate may change as stated below.
  ☐ **Index Rate:** The future rate will be __N/A__ the following index rate: __RENEWED FEB 26 2002__
  __N/A__

  ☐ **Ceiling Rate:** The interest rate ceiling for this note is the _____ ceiling rate announced by the __ELSA STATE BANK & TRUST CO. WESLACO__ Commissioner from time to time.
  ☐ **Frequency and Timing:** The rate on this note may change as often as _____
     A change in the interest rate will take effect _____
  ☐ **Limitation:** During the term of this loan, the applicable annual interest rate will not be more than __N/A__ % or less than
     __N/A__ %. The rate may not change more than __N/A__ % each __N/A__
**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
  ☐ The amount of each scheduled payment will change.        ☐ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a __actual/365 day__ basis.
**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
  ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
  ☐ at a rate equal to _____
☒ **LATE CHARGE:** If a payment is made more than __10__ days after it is due, I agree to pay a late charge of __5%__

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount above: _____

**PAYMENTS:** I agree to pay this note as follows:
☒ **Interest:** I agree to pay accrued interest __in 6 monthly installments beginning July 23, 2001 and with the principal at Maturity, January 23, 2002.__
☒ **Principal:** I agree to pay the principal __at Maturity, January 23, 2002.__

☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____
   and will be due _____ . A payment of $ _____ will be due _____ thereafter. The final payment of the entire
   unpaid balance of principal and interest will be due _____
**PURPOSE:** The purpose of this loan is __SUPPORT CONTRACT RECEIVABLE__
**ADDITIONAL TERMS:**

**EXHIBIT 2**

## SECURITY

**SECURITY INTEREST:** I give you a security interest in all of the Property described below that I now own and that I may own in the future (including, but not limited to, all parts, accessories, repairs, improvements, and accessions to the Property), wherever the Property is or may be located, and all proceeds and products from the Property.

☐ **Inventory:** All inventory which I hold for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

☐ **Equipment:** All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described in a list or schedule which I give to you will be included in the secured property, but such a list is not necessary for a valid security interest in my equipment.

☐ **Farm Products:** All farm products including, but not limited to:
  (a) all poultry and livestock and their young, along with their products, produce and replacements;
  (b) all crops, annual or perennial, and all products of the crops; and
  (c) all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.

☒ **Accounts, Instruments, Documents, Chattel Paper and Other Rights to Payment:** All rights I have now and that I may have in the future to the payment of money including, but not limited to:
  (a) payment for goods and other property sold or leased or for services rendered, whether or not I have earned such payment by performance; and
  (b) rights to payment arising out of all present and future debt instruments, chattel paper and loans and obligations receivable.
  The above include my rights and interests (including all liens and security interests) which I may have by law or agreement against an account debtor or obligor of mine.

SEP-17-2002(TUE) 15:12    ESB ... ...ACO-LOANS    (FAX)9.. 968 8831    P. 003/005

## ADDITIONAL TERMS OF THE NOTE

**DEFINITIONS** - As used on pages 1 and 2, "I" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** - The law of the state of Texas will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**PAYMENTS** - Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued and unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST** - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal sum outstanding at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to in this note (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE** - The index will serve only as a device for setting the interest rate on this note. You do not guarantee by selecting this index, or the margin, that the interest rate on this note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers.

**POST MATURITY RATE** - For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS** - If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph on page 2.

**MULTIPLE ADVANCE LOANS** - If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**SET-OFF** - I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where your rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be ... for the dishonor of any check when the dishonor occurs because you set off this debt against any of the accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right to set-off.

**DEFAULT** - I will be in default on this loan and any agreement securing this loan if any one or more of the following occurs:
(1) I fail to perform any obligation which I have undertaken in this note or any agreement securing this note; or
(2) you, in good faith, believe that the prospect of payment or the prospect of my performance of any other obligations under this note or any agreement securing this note is impaired.

**REMEDIES** - If I am in default on this note, you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of my debt under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "SET-OFF" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.
(6) You may make use of any remedy given to you in any agreement securing this note.

By selecting any one or more of these remedies you do not give up your right to use later any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to consider later the event a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES** - I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER** - I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest);
(3) give notice that amounts due have not been paid (notice of dishonor);
(4) give notice of intent to accelerate; or
(5) give notice of acceleration.
I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT** - I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit to notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**CREDIT INFORMATION** - I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information provide to you are or will be accurate, correct and complete.

---

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT, ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

---

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE AND SECURITY AGREEMENT (INCLUDING THOSE ON PAGES 1 AND 2).** I have received copy of this note and security agreement on today's date.
TRIAD BUILDERS, INC.

BY: _____
ROBERT SUSEN, PRESIDENT
SIGNATURE FOR LENDER

SEP-17-2002(TUE) 15:13     ESB WF..CO-LOANS     (FAX)95..068 8831     P. 004/005

| ROBERT SUSEN<br>2300 W. PIKE BLVD., STE 204<br>WESLACO, TEXAS 78596 | ELSA STATE BANK & TRUST CO.<br>WESLACO BANKING CENTER<br>203 E. BUSINESS 83, SUITE A<br>WESLACO TX 78596 | ..AD BUILDERS, INC.<br>2300 W. PIKE BLVD.<br>WESLACO, TX 78596 |
|---|---|---|
| **GUARANTOR'S NAME AND ADDRESS**<br>"I" includes each guarantor above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | **BORROWER'S NAME AND ADDRESS**<br>"Borrower" means each person above. |

# GUARANTY

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with borrower from time to time, I absolutely and unconditionally guarantee the full payment of the following debts (as herein defined) when due (whether at maturity or upon acceleration):

**PRESENT DEBT GUARANTY**

[X] I absolutely and unconditionally guarantee to you the payment and performance of the following described debt (including all renewals, extensions, refinancing and modifications) of the borrower: ___Loan #111832373 in the amount of $ 200,025.00___

**PRESENT AND FUTURE DEBT GUARANTY**

[ ] I absolutely and unconditionally guarantee to you the payment and performance of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you, including, but not limited to, the following described debt(s): _____

[ ] I absolutely and unconditionally guarantee to you the payment and performance of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you, up to the principal amount of $ __N/A__ plus accrued interest, attorneys' fees and collection costs referable thereto (when permitted by law), and all agreements evidencing these debts and securing the payment of the debt. You may, without notice, apply this guaranty to such debts of the borrower as you may select from time to time.

**DEFINITIONS** - As used in this agreement, the terms "I," "we" and "my" mean all persons signing this guaranty agreement, individually and jointly, and their heirs, executors, administrators and assigns.
The term "debt" means all debts, liabilities, and obligations of the borrower (including, but not limited to, all amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, except for any obligations incurred by borrower after the date of this guaranty for which the borrower meets your standard of creditworthiness based on the borrower's own assets and income without the addition of a guaranty or for which, although you require a guaranty, the borrower chooses someone other than me to guaranty the obligation.
**APPLICABLE LAW** - This agreement is governed by the law of the state in which you are located. Any term of this agreement that does not comply with applicable law will not be effective if that law does not expressly or impliedly permit variations by agreement. If any part of this agreement cannot be enforced according to its terms, this fact will not affect the balance of this agreement.
**REVOCATION** - I agree that this is an absolute and continuing guaranty. If this guaranty is limited to the payment of a specific debt of the borrower described above, this agreement cannot be revoked and will remain in effect until the debt is paid in full. If this guaranty covers both the borrower's present and future debts, I agree that this guaranty will remain binding on me, whether or not there are any debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence.
Notice of revocation or notice of my death or incompetence will not affect my obligations under this guaranty with respect to any debts incurred by or for which you have made a commitment to borrower before you received such notice, and all renewals, extensions, refinancings, and modifications of such debts. I agree that if any other person signing this agreement provides a notice of revocation to you, I will still be obligated under this agreement until I provide a notice of revocation to you. If any other person signing this agreement dies or is declared incompetent, such fact will not affect my obligations under this agreement.
**OBLIGATIONS INDEPENDENT** - I agree that I am obligated to pay according to the terms of this guaranty even if any other person has agreed to pay the borrower's debt. My obligation to pay according to the terms of this guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the borrower.
I will remain obligated to pay on this guaranty even if any other person who is obligated to pay the borrower's debt, including the borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law. In such situations, my obligation shall include post-bankruptcy petition interest and attorney's fees and any other amounts which borrower is discharged from paying or which do not otherwise accrue to borrower's indebtedness due to borrower's discharge. I will also be obligated to pay you, to the fullest extent permitted by law, any deficiency remaining after foreclosure of any mortgage or security interest securing borrower's debt, whether or not the liability of borrower or any other obligor for such deficiency is discharged by statute or judicial decision. If any payments by borrower to you are thereafter set aside, recovered, rescinded, in whole or in part, are settled by your or your discretion, or are in any way recouped or recovered from you for any reason (including, without limitation, the bankruptcy, insolvency, or reorganization of borrower or any other obligor), then I am obligated to reimburse you for the full amount you so pay together with costs, interest, attorneys' fees and all other expenses which you incur in connection therewith. I also agree that if my liability is limited to a stated principal amount (plus other agreed charges), you may allow the borrower to incur debt in excess of the specified amount and apply to the payment of such excess any amounts you receive for payment of the debt from the borrower or any other person, any amounts resulting from any collateral, or amounts received from any other source, without affecting my obligations under this agreement.
No modification of this agreement is effective unless in writing and signed by you and me, except that you may, without notice to me and without the addition of a signed writing or my approval: (1) release any borrower or other person who may be liable for borrower's debt, (2) release or substitute any collateral, (3) fail to perfect any security interest or otherwise impair any collateral, (4) waive or impair any right you may have against any borrower or other person who may be liable for borrower's debt, (5) settle or compromise any claim against the borrower or any person who may be liable for the borrower's debt, (6) procure any additional security for persons who agree to be liable for borrower's debt, (7) delay or fail to pursue enforcement of the debt, (8) apply amounts you receive from the borrower or other persons to payment of the debt in any order you select, (9) make any election with respect to the debt provided by law or any agreement with any person liable for the debt, (10) exercise or fail to exercise any rights you have with respect to the debt, (11) extend new credit to the borrower, or (12) renew, extend, refinance or modify the borrower's debt on any terms agreed to by you and the borrower (including, but not limited to, changes in the interest rate or in the method, time, place or amount of payment) without affecting my obligation to pay under this guaranty.
**WAIVER** - I waive presentment, demand, protest, notice of dishonor, and notice of acceptance of this guaranty. I also waive, to the extent permitted by law, all notices, all defenses and claims that the borrower could assert, any right to require you to pursue any remedy or such payment from any other person before seeking payment under this agreement, and all other defenses to the debt, except payment in full. You may without notice to me and without my consent, enter into agreements with the borrower from time to time for purposes of creating or continuing the borrower's debt as allowed by this guaranty. I agree that I will be liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure (or repossession) and sale of any collateral without regard to whether borrower's obligation to pay such deficiency is discharged by law. If any payments to you on the debt are set aside, recovered, or required to be returned in the event of the insolvency, bankruptcy, or reorganization of the borrower, my obligations under this agreement will continue as if such payments had never been made.
I also waive and relinquish all present and future claims, rights, and remedies against borrower or any other obligated party arising out of the creation or my performance of this guaranty. My waiver includes, but is not limited to, the right of contribution, reimbursement, indemnification, subrogation, exoneration, and any right to participate in any claim or remedy you may have against the borrower, collateral, or other obligated party for borrower's debts, whether or not such claim, remedy, or right arises in equity, or under contract, statute or common law.
**REMEDIES** - If I fail to keep any promise contained in this agreement or any agreement securing this agreement, you may, make this agreement and the borrower's debt immediately due and payable, and may set-off the obligation against any debt I have to receive money from you (however, you may not set-off against any accounts in which my rights are only as a fiduciary or my IRA or other tax-deferred retirement account), you may use any remedy you have under state or federal law, and you may use any remedy given to you by any agreement securing this agreement. If I die, am declared incompetent, or become insolvent (either because my liabilities exceed my assets or because I am unable to pay my debts as they become due), you may make the debt immediately due and payable.
**COLLECTION COSTS** - Except when prohibited by law, I agree to pay the reasonable costs and expenses you incur to enforce and collect this agreement, including attorneys' fees and court costs.

**SECURITY** - This guaranty is [X] unsecured [ ] secured by _____

| NOTICE TO COSIGNER | In witness whereof, I have signed my name and affixed my seal on this |
|---|---|
| **You are being asked to guarantee the debts described above. If you are making a "Present and Future Debt Guaranty" as identified above, you are being asked to guarantee present as well as futuro debts of the borrower entered into with this lender. Think carefully before you do. If the borrower doesn't pay these debts, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.**<br><br>**You may have to pay up to the full amount of these debts if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.**<br><br>**The lender can collect these debts from you without first trying to collect from the borrower. The lender can use the same collection methods against you that can be used against the borrower, such as suing you, etc. If these debts are ever in default, that fact may** | ___27th___ day of ___June, 2001___ and, by doing so, agree to the terms of this guaranty and acknowledge having read the Notice to Cosigner.<br><br>_____/s/_____ (SEAL)<br>ROBERT SUSEN<br><br>_____ (SEAL)<br><br>_____ (SEAL)<br><br>_____ (SEAL) |

SEP-17-2002(TUE) 15:14    ESB WESLACO-LOANS    (FAX)956 968 8831    P. 005/005

| | | |
|---|---|---|
| **TRIAD BUILDERS, INC.**<br>**2300 W. PIKE BLVD.**<br>**WESLACO, TX 78596**<br><br>**BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **ELSA STATE BANK & TRUST CO.**<br>**WESLACO BANKING CENTER**<br>**203 E. BUSINESS 83, SUITE A**<br>**WESLACO TX 78596**<br><br>**LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | Line of Credit No._____<br>Date **June 27, 2001**<br>Max. Credit Amt.**200,025.00**<br>Loan Ref. No. **1118323 73** |

You have extended to me a line of credit in the
AMOUNT of <u>TWO HUNDRED THOUSAND TWENTY FIVE AND NO/100</u>                            $ <u>200,025.00</u>

You will make loans to me from time to time until _____m. on <u>January 23, 2002</u>              . Although the line of credit expires on that date, I will remain obligated to perform all my duties under this agreement so long as I owe you any money advanced according to the terms of this agreement, as evidenced by any note or notes I have signed promising to repay these amounts.
    This line of credit is an agreement between you and me. It is not intended that any third party receive any benefit from this agreement, whether by direct payment, reliance for future payment or in any other manner. This agreement is not a letter of credit.

**1. AMOUNT:** This line of credit is:
    ☒ **OBLIGATORY:** You may not refuse to make a loan to me under this line of credit unless one of the following occurs:
        a. I have borrowed the maximum amount available to me;
        b. This line of credit has expired;
        c. I have defaulted on the note (or notes) which show my indebtedness under this line of credit;
        d. I have violated any term of this line of credit or any note or other agreement entered into in connection with this line of credit;
        e. _____

    ☐ **DISCRETIONARY:** You may refuse to make a loan to me under this line of credit once the aggregate outstanding advances equal or exceed
        $ <u>N/A</u>        .

Subject to the obligatory or discretionary limitations above, this line of credit is:
    ☐ **OPEN-END** (Business or Agricultural only): I may borrow up to the maximum amount of principal more than one time.
    ☒ **CLOSED-END:** I may borrow up to the maximum only one time.

**2. PROMISSORY NOTE:** I will repay any advances made according to this line of credit agreement as set out in the promissory note. I signed on
<u>June 27, 2001</u>                , or any note(s) I sign at a later time which represent advances under this agreement. The note(s) set(s) out the terms relating to maturity, interest rate, repayment and advances. If indicated on the promissory note, the advances will be made as follows:
_____
_____
_____
_____

**3. RELATED DOCUMENTS:** I have signed the following documents in connection with this line of credit and note(s) entered into in accordance with this line of credit:
    ☐ security agreement dated _____    ☐ _____
    ☐ mortgage dated _____    ☐ _____
    ☐ guaranty dated _____    ☐ _____

**4. REMEDIES:** If I am in default on the note(s) you may:
    a. take any action as provided in the related documents;
    b. without notice to me, terminate this line of credit.
    By selecting any of these remedies you do not give up your right to later use any other remedy. By deciding not to use any remedy should I default, you do not waive your right to later consider the event a default, if it happens again.

**5. COSTS AND FEES:** If you hire an attorney to enforce this agreement I will pay your reasonable attorney's fees, where permitted by law. I will also pay your court costs and costs of collection, where permitted by law.

**6. COVENANTS:** For as long as this line of credit is in effect or I owe you money for advances made in accordance with this line of credit, I will do the following:
    a. maintain books and records of my operations relating to the need for this line of credit;
    b. permit you or any of your representatives to inspect and/or copy these records;
    c. provide to you any documentation requested by you which support the reason for making any advance under this line of credit;
    d. permit you to make an advance payable to the seller (or seller and me) of any items being purchased with that advance;
    e. _____

**7. NOTICES:** All notices or other correspondence with me should be sent to my address stated above. The notice or correspondence shall be effective when deposited in the mail, first class, or delivered to me in person.

**8. MISCELLANEOUS:** This line of credit may not be changed except by a written agreement signed by you and me. The law of the state in which you are located will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation.

FOR THE LENDER

**SIGNATURES: I AGREE TO THE TERMS OF THIS LINE OF CREDIT. I HAVE RECEIVED A COPY ON TODAY'S DATE.**

**TRIAD BUILDERS, INC.**

**TED P. SUNDERLAND**

Title  **EXECUTIVE VICE PRESIDENT**

BY: _____
ROBERT SUSEN, PRESIDENT

# ESB
# ELSA STATE BANK & TRUST Co.

July 12, 2001

**Ted P. Sunderland**
Executive Vice President - Secretary to the Board

Thomas Boucher
Browndrew, LLC
656 W. Randolph St. Suite 400
Chicago, Illinois 60661

Ref: Triad Builders Inc.

Dear Mr. Boucher:

Effective June 27, 2001, the Elsa State Bank & Trust Co. has extended a loan to Triad Builders, Inc. This loan and other indebtedness are secured in part by your contract dated June 4, 2001 in the amount of $1,145,990.00.

Please make all future checks representing payments by you to Triad Builders, Inc. and Elsa State Bank & Trust Co. Joint payments should continue until obligations to us are paid in full.

Please acknowledge by signing the enclosed copy and return to me as soon as possible.

Sincerely,

Ted P. Sunderland
Executive Vice President

Approved:

Triad Builders, Inc.

By: _____
Robert Susen
President

Acknowledged:

Browndrew, LLC

By: _____
Thomas Boucher

**WESLACO BANKING CENTER**
203 E. Business 83, Suite A
Weslaco, Texas 78596
956.968.8645
FAX 956.968.4748

EXHIBIT
3

**02-0011518240**
**12/03/2001 05:00 PM**

FILED
TEXAS
SOS     SECRETARY OF STATE

4499210002

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

ELSA STATE BANK & TRUST CO.
WESLACO BANKING CENTER
203 E. BUSINESS 83, SUITE A
WESLACO, TX  78596

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| TRIAD BUILDERS, INC. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2300 W. PIKE BLVD. | WESLACO | TX | 78596 | |

| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| 74-2694982 | | CORPORATION | TEXAS | ☒ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☒ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ELSA STATE BANK & TRUST CO. WESLACO BANKING CENTER | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | WESLACO | TX | 78596 | |

4. This FINANCING STATEMENT covers the following collateral:

ASSIGNMENT OF CONTRACT FROM THE BROWNDREW, LLC. GROUP, INC. IN THE AMOUNT OF
$1,145,990.00 FOR THE CONSTRUCTION OF THE SOCIAL SECURITY ADMINISTRATION OFFICE
LOCATED AT 1735 COFFEE PORT ROAD, BROWNSVILLE, CAMERON COUNTY, TEXAS, DATED
JUNE 04, 2001.

**EXHIBIT**
**4**

5. ALTERNATIVE DESIGNATION (if applicable):  ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.     Attach Addendum [if applicable]     7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]  ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

Bankers Systems, Inc., St. Cloud, MN  Form UCC-1-LAZ  9/13/2000

**NOTICE: THIS IS NOT A LIEN. THIS IS ONLY AN AFFIDAVIT CLAIMING LIEN.**

### Affidavit Claiming Mechanic's and Materialman's Lien

Affiant, ROBERT J. SUSEN, on oath swears that the following statements are true and are within the personal knowledge of Affidant:

My name is ROBERT J. SUSEN, I am the president of TRIAD BUILDERS, INC. ("Claimant"). This affidavit is made to perfect a mechanic's and materialman's lien against the real property described below:

Lot 2, Block 1, HAPCO Subdivision, a Subdivision in Cameron County, Texas, according to the Plat of said Subdivision recorded in Cabinet 1, Page 118-B, Map Records, Cameron County, Texas, also known as Lots 1 and 2, GSA Subdivision, according to Plat thereof recorded in the Map Records of Cameron County, Texas.

1.     Claimant has an unpaid claim in the amount of **Two Hundred Ninety-Two Thousand Nine Hundred Forty-One and 55/100ths Dollars ($292,941.55)** (the "Claim Amount") for labor and materials furnished on the construction of improvements of a commercial building located in Cameron County, Texas (the "Project"). The Claim Amount is, within my personal knowledge, just and true, the same is due and unpaid, and all just and lawful offsets, payments, and credits have been allowed. The Claim Amount is for labor and materials furnished on the Project, on which a systematic record has been kept.

2.     The name and last known address of the owner or reputed owner ("Owner") of the real property and improvements on which this claim is made is **THE DREW GROUP INC., 1333 n. Kingsbury, Chicago, Illinois 60622.**

3.     The Claim Amount represents the unpaid contract price due Claimant as the general contractor for the Project.

4.     Claimant furnished the above-described labor and materials under a written contract between the Claimant and the Owner.

5.     The real property and improvements on it are sought to be charged with Claimant's lien.

6.     Claimant claims a mechanic's and materialman's lien on the above-described real property and improvements thereon to secure payment of its Claim Amount in accordance with the Texas Property Code.

7.     Claimant's physical address and mailing address is 2300 West Pike Blvd., Suite 200, Weslaco, Texas 78596.

8.     In compliance with the Texas Property Code, Claimant is sending one copy of this affidavit to Owner at its last known address and also one copy to the above-referenced original contractor as its last known address.

**EXHIBIT
5**

ROBERT J. SUSEN

SWORN AND SUBSCRIBED BEFORE ME ON _September 12_, 2002 by ROBERT J. SUSEN.

Notary Public, State of Texas

STATE OF TEXAS )
COUNTY OF _Hidalgo_ )

This instrument was acknowledged before me on _September 12_, 2002 by ROBERT J. SUSEN.

Notary Public, State of Texas

PREPARED IN THE LAW OFFICE OF:

Matthew L. Jones
Jones, Galligan, Key & Lozano, L.L.P.
2300 West Pike Blvd., Suite 300
Post Office Drawer 1247
Weslaco, Texas 78599-1247

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS
On: Sep 13,2002 at 04:11P

Document Number:      00046590

Joe G Rivera
County Clerk
By:
Liliana Pizana, Deputy
Cameron County

Official Receipt for Recording in:

    Cameron County Clerk
    964 E Harrison

    Cameron, Texas 78520

Issued To:
    JONES GALLIGAN KEY LOZANO
    P.O. DRAWER 1247
    956 968-5402
    WESLACO TX 78599

### Recording Fees

| Document Description | Number | Vols | Page | Recording Amount |
|---|---|---|---|---|
| REALPRP | 00048590 | 8325 | 196 | $18.00 |
| | | | | $18.00 |

### Collected Amounts

| Payment Type | | Amount |
|---|---|---|
| Check | 44757 | $18.00 |
| | | $18.00 |

| | |
|---|---|
| Total Received : | $18.00 |
| Less Total Recordings: | $18.00 |
| Change Due : | $.00 |

Thank You
JOE G RIVERA - County Clerk

By Deputy - Liliana Pizana

Receipt#    Date    Time
0201206  09/13/2002 04:11p